## COMMERCIAL CREDIT CO. v. INSULAR MOTOR CORPORATION.

(Circuit Court of Appeals, First Circuit. February 21, 1927.)

No. 2051.

1. Contracts ⚖⇒324(2)—Contract entitling credit company to require automobile distributor, refusing to sell time sales paper, to repurchase its unmatured paper, held not exclusive of damages for breach.

Where contract between a commercial credit company and eight automobile distributors, in which company agreed to finance distributors' retail sales paper in consideration of distributors' agreement to sell such obligations to company for two years, provision of contract that, if any distributor should discontinue or refuse to offer such obligations to company, it might require dealer to repurchase its customers' unmatured obligations for cash, held not exclusive of ordinary right to damages arising out of breach.

2. Contracts ⚖⇒10(1)—Contract to purchase "acceptable" retail time sales obligations from automobile distributors held not to lack mutuality.

Contract between a commercial credit company and eight automobile distributors, in which company agreed to finance dealers' retail time sales paper and purchase acceptable obligations, in consideration of dealers agreeing to sell such obligations to company for two years, held bilateral, and not void for lack of mutuality; "acceptable" meaning acceptable within usual business meaning of word, and not by whim.

3. Damages ⚖⇒40(2)—Damages for automobile dealer's breach of contract to sell retail time sales obligations to credit company held not too remote and speculative.

Damages for automobile distributor's breach of contract between a commercial credit company and eight distributors, in which company agreed to finance dealers' retail time sales paper and purchase acceptable obligations, in consideration of dealers agreeing to sell such obligations to company for two years, held not too remote and speculative for recovery.

4. Contracts ⚖⇒330(4)—Complaint in credit company's action for dealer's breach of contract to sell obligations of customers held not defective for failure to join other dealers.

Where contract of commercial credit company to purchase from automobile distributors acceptable retail time sales obligations of distributors' customers, in consideration for distributors' agreement to sell obligations to company for two years, was signed by eight distributors, complaint against one of dealers for breach of contract was not bad, because others were not made parties thereto, since instrument constituted eight separate contracts.

In Error to the District Court of the United States for the District of Porto Rico; Wells, Judge.

Action by the Commercial Credit Company against the Insular Motor Corporation.

Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Duane R. Dills, of New York City (O. B. Frazer, of San Juan, Porto Rico, and Frank H. Towsley and Chas. E. Hirsimaki, both of New York City, on the brief), for plaintiff in error.

Albert Levert, of New York City (John Thomas Smith, of New York City, Weld A. Rollins, of Boston, Mass., and Cayetano Coll y Cuchi and Gustavo Cruzado Silva, both of San Juan, Porto Rico, on the brief), for defendant in error.

Before JOHNSON and ANDERSON, Circuit Judges, and LOWELL, District Judge.

ANDERSON, Circuit Judge. In this action for breach of contract the court below sustained the demurrer and entered judgment for the defendant. The written contract sued upon is set forth in the margin.[1] The gist of it is that the plaintiff agreed with eight San Juan automobile distributors to open an office in San Juan for financing their retail sales paper in consideration of these dealers agreeing to sell to plaintiff the time sales obligations of their customers' for two years from January 1, 1925. The defendant's business was the largest of the eight.

The complaint, filed October 8, 1925, alleges that the plaintiff fully complied with this contract; that the defendant in September, 1925, without legal excuse, broke the contract by turning all such business over to the General Motors Acceptance Corporation. The amended demurrer sets up two grounds:

(1) That no cause of action is stated, in an alleged breach of contract in which the anticipated profits depend upon uncertain and changing conditions, such as market fluctuations, the chances of business, and the possibility of continuing with the business both by the plaintiff and the defendant.

(2) That the only remedy for any breach

---

[1] December 19, 1924.

To the Motor Vehicle Distributors and Dealers in San Juan, Porto Rico:

Gentlemen: We have had the pleasure of spending some time here with Messrs. Hitchman and Smallwood of your city. These gentlemen tell us that they represent the following motor vehicle distributors and dealers in Porto Rico, whose approximate annual gross sale of new motor vehicles appears opposite each name:

| | |
|---|---|
| Zorrilla, Saenz & Co., San Juan, P. R. Overland-Willys-Knight | $100,000 |
| Insular Motors, Inc., San Juan, P. R. Buick-Chevrolet | 800,000 |
| Sanchez Morales & Co., San Juan, P. R. Lincoln, Ford, Fordson | 500,000 |
| Porto Rico Automobile Co., San Juan, Nash-Cadillac P. R. | |
| Smallwood Brothers, San Juan, P. R. Ford, Lincoln, Fordson | 500,000 |
| Andreu Aguilar & Co., Inc., San Juan, P. R. Dodge | 250,000 |
| Adrian Nelson, San Juan, P. R. Maxwell-Chrysler | 100,000 |
| Santiago Panzardi, Limited, San Juan, P. R. Hudson-Essex-Packard | 400,000 |
| Panzardi (Ponce), San Juan, P. R. Hudson, Essex, Packard | 100,000 |

In addition, they state there are a few more dealers on the island respresenting Studebaker, Hupmobile, and some other cars, but on behalf of whom they are not authorized to speak or to make a commitment.

Messrs. Hitchman and Smallwood desire to interest our company in the opening of an office in San Juan, Porto Rico, and the extension of credit and collection service on motor vehicle retail time sales paper, for which purpose, on behalf of their respective firms and of the other dealers and distributors as above, they agree, briefly, as follows:

That the respective dealers and distributors will indorse without recourse such retail time sales paper, but each will assist us to a reasonable extent in obtaining credit information upon prospective purchasers and in trying to collect delinquent paper and in repossessing vehicles.

That the aforesaid dealers and distributors will, and they hereby agree to, offer to us for purchase for a period of two (2) years from January 1, 1925, all obligations of purchasers received on account of the sale by them of motor vehicles upon the terms and conditions of the repurchase agreement and rate chart hereto attached and made a part hereof, with such modifications of each which may be made from time to time by mutual consent.

That should, for any reason, any of the above distributors or dealers discontinue, fail, or refuse to offer all such obligations to us for purchase during said two (2) years, such respective dealer or distributor will, at our option and upon demand by us, within thirty (30) days thereafter, repurchase from us for cash for the unpaid amount thereof, any and all obligations, of purchasers acquired by us from such distributor or dealer, and remaining unpaid, even though not then due or indorsed by such distributor or dealer.

That the above distributors and dealers are now in good financial condition and credit standing, with substantial investment in their respective companies.

In view of the above representations, our company will and does hereby agree to either enter Porto Rico directly or through an affiliated or subsidiary company and shortly after January 1, 1925, to open an office there and offer credit and collection service on motor vehicles retail time sales paper, available to each of the above distributors and dealers so long as their respective financial condition and credit standing shall continue satisfactory to us, and from time to time to purchase such acceptable retail time sales obligations of their

is found in the following clause contained in the contract:

"That should, for any reason, any of the above distributors or dealers discontinue, fail or refuse to offer all such obligations to us for purchase during said two (2) years, such respective dealer or distributor will, at our option and upon demand by us, within thirty (30) days thereafter, repurchase from us for cash for the unpaid amount thereof, any and all obligations, or purchases acquired by us from such distributor or dealer, and remaining unpaid even though not then due or endorsed by such distributor or dealer."

The court below sustained the demurrer on the second ground alone. But in this court the defendant has argued broadly that the contract is void for lack of mutuality, and that, if not void, the damages are speculative and remote, and not recoverable. It is desirable, even if not technically necessary, for this court now to deal with those contentions.

[1] 1. We are unable to adopt the view of the court below that the paragraph quoted is an exclusive remedy provided by the contract itself for any damage arising from a breach. Such a construction practically nullifies the two-year provision in the previous paragraph. Looking at the contract as a whole (as, of course, we must), it is plain that the plaintiff agreed to embark on an enterprise obviously involving substantial expense, in consideration of the agreement of the eight named dealers to give plaintiff for this reasonable two-year period all their business of the described kind. The optional provision is entirely distinct from the general obligation of each dealer to furnish plaintiff business for two years. It simply gives the plaintiff an option for speedy liquidation of all the

---

customers covering the sale of new and used motor vehicles upon the conditions above set forth, with the following further conditions:

That we will supply capable and efficient credit and collection service at San Juan, Porto Rico, and will endeavor to collect the paper from the respective purchasers, keeping each distributor or dealer duly advised as to delinquents, and will endeavor to repossess any car when necessary to do so and deliver same to the respective distributor or dealer.

That upon delivery of any repossessed motor vehicle to the respective distributor or dealer from whom the obligation of the purchaser was acquired, said distributor or dealer will and does hereby agree to repurchase for cash such motor vehicle from us upon the terms and conditions of the repurchase agreement in form hereto attached.

That the proposed plan shall include fire and collision insurance in an acceptable company, with the usual $50 deductible provision, based upon 80 per cent. of the cash selling price, and the present rates shall by mutual consent from time to time be either advanced or reduced in case of an advance or decrease in the present gross rate of 4 per cent. of such fire and collision insurance.

That by mutual consent the parties hereto shall have the right to change from time to time the company with whom such fire and collision insurance shall be placed.

The above briefly sets forth the conditions upon which the business shall be offered to and accepted by us, and the parties hereto hereby confirm their understanding thereof to such effect as shown by their signatures hereunder.

This agreement and all matters in connection therewith shall be construed and interpreted under the laws of the state of Delaware, United States of America.

Very truly yours,
Commercial Credit Company,
AED.ACN            By A. E. Duncan,
Chairman of the Board.
Attest: G. P. Hopkins, Asst. Sec'y.
Baltimore, Md., Dec. 19, 1924.

The undersigned, on behalf of their respective firms, and also on behalf of the aforementioned distributors and dealers of motor vehicles in Porto Rico, hereby accept and confirm the aforementioned agreement and agree to abide by the terms and conditions thereof.

Insular Motor Corporation,
J. C. Hitchman, V. P. & Gen. Mgr.
Witness: S. C. Rosson.
Smallwood Brothers,
By Th. Smallwood.
Witness: S. G. Rosson.

Repurchase Agreement.

Town of Porto Rico.

Date, ——, 192—.
Commercial Credit Company, Baltimore, Md.:

Gentlemen: We hereby apply to you to assist us in the sale and distribution of motor vehicles handled by us in Porto Rico, by acquiring from us such paper as may be acceptable to you, representing deferred payments on such motor vehicles, it being understood that the paper is to be handled upon your regular time sales plan in effect from time to time in Porto Rico, but to be indorsed by us without recourse, with the exception of paper covering the sale of Fordson tractors and all motor vehicles sold on the "farmers' plan," which we agree to indorse with recourse, protest and notice of protest thereon being hereby waived.

In consideration of your accepting from the undersigned promissory notes indorsed without recourse by the undersigned (said notes having been given to the undersigned by purchasers of motor vehicles as evidence of the deferred installments of the purchase price of such motor vehicles), the undersigned guarantees and agrees that, in the event of repossession of any motor vehicles sold on the monthly payment plan, securing such paper, either because of failure of the maker to pay same, or because you deem repossession necessary for your security, we will, immediately upon demand by you after such repossession, repurchase from you for cash such motor vehicles for an amount not less than the balance due you thereon, including all expenses of repossession, attorney's fees, etc., and without any deduction for deterioration, wear and tear, or use.

obligations of the customers of any dealer who has severed the fundamental relation created by the contract. The word "discontinue" seems broad enough to cover even an agreed severance. But this repurchase provision is not in its nature, or in its financial result, a measure of damages for a wrongful severance of the business relation created by the contract.

It would be enough to dispose of the demurrer that there is nothing in this record to show that the plaintiff has exercised its option. But we do not put our decision on that narrow ground. We hold that the repurchase provision is not exclusive of the ordinary right for damages arising out of a breach.

[2] 2. Defendant's broader contention—that the contract is void for lack of mutuality—is untenable. The undertaking evidenced by this contract is a natural, honest, and useful business enterprise. The contract is plainly bilateral. It imports that the automobile dealers of San Juan desired banking services of the special kind required by the modern method of selling automobiles under conditional sales contracts on the installment plan, and that the plaintiff agreed that, if these named dealers would turn their banking business of this sort over to it for a period of two years, it would establish such a banking concern in San Juan and furnish the usual facilities of such a concern.

Plaintiff's agreement to purchase "acceptable retail time sales obligations" of the customers of the contract dealers is to be given its normal business meaning, bearing in mind that the plaintiff would have a natural business motive to find all such obligations acceptable, if reasonably sound and fit to be handled by such a financing concern. Acceptable

---

In cases where you are required by law to keep such motor vehicles for any required period, in order that the purchaser may redeem same, then, in such an event, the undersigned agrees to store such motor vehicles during said period of time without cost or expense to you and to repurchase the same from you and pay the amount above mentioned as soon as you can make legal delivery of same.

It is understood that delivery to the undersigned of any such repossessed motor vehicles may be made at such point as you may obtain possession of same. It is further understood that you will not sell or dispose of any such motor vehicles without first giving us an opportunity to repurchase same for the balance due you, including costs and attorney's fees, unless you are required to do so by law.

This shall be an irrevocable continuing agreement until all such contracts and notes purchased by you from the undersigned shall have been paid in full to you. This agreement is given in lieu of indorsement on said notes, or a guaranty of their payment by the undersigned.

In witness whereof I [or we] have hereunto set my [or our] hand and seal this ―――― day of ――――, 192―.

――――, by ――――.

Witness: ――――

Accepted at Baltimore, Md., by Commercial Credit Company this ―――― day of ――――, 192―.
――――, by ――――,
· Sec'y., Treas., Asst. Sec'y., Asst. Treas.
――――, by ――――,
Sec'y., Treas., Asst. Sec'y., Asst. Treas.
O. K. Th. Smallwood.
O. K. J. C. Hitchman.
O. K. A. E. Duncan.

January 2, 1925.

Commercial Credit Company, Baltimore,

New Passenger, Low-Priced Commercial Car and Fordson Tractor Rates for Porto Rico —Equal Monthly Payment Sales.

These rates include fire insurance for 80 per cent. of cash selling price and also $50 deductible collision insurance for one year on passenger and commercial cars; tractors to be covered by 80 per cent. fire insurance only.

Passenger and Commercial Car Paper—Repurchase Agreement Fordson Tractor Paper—Indorsed with Recourse.

To arrive at finance charge, mulitply delivery cash price of the car by the percentage figure which is under the time the note is to run.

New passenger and commercial car rates as below; tractor rates 1 per cent. less.

| Down Payment. | 6 Months. | 8 Months. | 10 Months. | 12 Months. |
|---|---|---|---|---|
| 33⅓% cash payment.. | 8% | 9% | 10% | 12% |
| 40% cash payment.. | 7% | 8% | 9% | 11% |
| 50% cash payment.. | 6% | 7% | 8% | 9% |
| 60% cash payment.. | 5% | 6% | 7% | 8% |

New Cars for Hire.—Will not be financed other than by special arrangement, in which event add 2 per cent. of cash selling price to above rate, but will include only fire insurance for 80 per cent. to purchasers. No collision insurance.

Farmers' Plan—All Indorsement with Recourse.

New passenger, commercial car rates as below; tractor rates 1 per cent. less.

Plan A.—40 per cent. cash; balance ½ in 4 and ½ in 8 months; 11 per cent. of cash selling price.

Plan B.—50 per cent. cash; balance payable in 8 months; 12 per cent. of cash selling price.

Used Car Rates.

Insurance coverage on used cars includes fire insurance for 80 per cent. cash selling price and $50 deductible collision insurance for one year.

| Down Payment. | 6 Months | 8 Months |
|---|---|---|
| 40% cash payment | 9 | 10 |
| 50% cash payment | 8 | 9 |
| Minimum charge: $30.00. | | |

Used Cars for Hire.—Will not be financed other than by special arrangement, in which event, add 2 per cent. of cash selling price to above rates. Collision insurance covers dealer's interest only.

O. K. T. H. Smallwood.
O. K. J. C. Hitchman.

does not mean acceptable by whim; it means acceptable within the usual business meaning of the word as applied to this kind of business dealings. Failure or arbitrary refusal by the plaintiff to furnish the banking credit reasonably contemplated by the contract would plainly have been a breach of a legal duty, grounding a valid claim for damages by any dealer thus injured.

[3] 3. It is not necessary for this court to go so far as some courts have gone—Randall v. Peerless Motor Car Co., 212 Mass. 352, 380, 99 N. E. 221; Gagnon v. Sperry & Hutchinson Co., 206 Mass. 547, 92 N. E. 761; Hanson & Parker v. Wittenberg, 205 Mass. 319, 91 N. E. 383; John Hetherington & Sons v. William Firth Co., 210 Mass. 8, 21, 95 N. E. 961; Maynard v. Royal Worcester Corset Co., 200 Mass. 1, 8, 85 N. E. 877; Dennis v. Maxfield, 10 Allen, 138—in order to hold unsound defendant's contention that the damages are too remote and speculative to ground a recovery. The loss arising from a breach of such a contract is much less difficult of approximately accurate assessment than are damages in cases of personal injury, not to resort to such difficult problems as valuations involving good will and going concern claims.

[4] 4. Groundless is the suggestion, rather faintly made, that the complaint is bad because the other seven dealers are not parties. Though in one paper, there are really eight contracts. This appears, not only from the nature of the agreement, but by the repeated use of the word "respective," both in the body of the contract and in the acceptance clause signed by Hitchman and Smallwood.

5. None of the cases cited by defendant are in point. Citation and analysis of them would not be useful. Stated as a generalization, we hold the contract plain in terms and enforceable according to its terms.

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings, not inconsistent with this opinion, with costs to the plaintiff in error in this court.