Abraham 1ST. Gelleb, J.
Defendants move for dismissal of the complaint for legal insufficiency.
This is an action by a stock brokerage firm which entered into an underwriting agreement with the corporate defendant with respect to a proposed public offering of 50;000 shares of its Class A stock to be sold at $6 per share. The first cause of action is asserted against the corporate defendant for the underwriting commissions and allowance of which plaintiff was allegedly deprived as the result of said defendant’s repudiation and anticipatory breach of the agreement. The second cause is against the individual defendants — the officers, directors and principal stockholders of the corporation — for said damages arising from their alleged wrongful and intentional inducement to the corporate defendant to repudiate its agreement.
In connection with this transaction an agreement was made for the purchase by plaintiff from the individual defendants of a certain number of shares of the no par common stock of the corporation. It was provided that plaintiff deliver its promissory note for the purchase price payable on or before five years from date thereof without interest, but that the note could not be prepaid, except after the expiration of one year from the effective date of the proposed public offering of the Class A stock. The said common stock was immediately redelivered to the individual defendants as security with an irrevocable proxy to vote same. The third cause of action is asserted against the individual defendants for damages representing the difference between fair market value of said *503 common stock and the amount of the note, arising from defendants’ alleged inducement of the corporation to repudiate the underwriting agreement and the consequent inability of plaintiff to repay the note and to receive said stock, thereby repudiating their agreement for the sale of said stock.
The complaint alleges that, as provided in the underwriting agreement, the corporate defendant agreed to file and obtain the effectiveness of a certain notification with the Securities and Exchange Commission pursuant to the applicable regulations so as to permit the public offering of its Class A stock; that the company did file such notification; but that, about four months later, it withdrew its aforesaid notification, refusing to file additional clarifying and amendatory information requested by the Securities and Exchange Commission, and informed plaintiff that it would no longer prosecute its application. Plaintiff alleges that, by said repudiation, it was prevented from undertaking and performing the offering and sale of the Class A stock and thus deprived of the commissions and allowance eamable under its agreement.
The agreement provided for commissions on an “ all-or-none ” basis: “ Subject to the Notification becoming effective, the Company hereby employs you [the plaintiff] as its exclusive agent, to find purchasers for 50,000 shares of the Company’s Class A stock * 8 8 and 8 8 8 you hereby accept such agency and agree to use your best efforts, on an all-or-none basis, to find such purchasers commencing as soon after the Effective Date as in your judgment is advisable. Tour aforesaid agency shall terminate sixty business days after the Effective Date. * 8 * If all of the shares are sold, as herein contemplated, you shall be entitled to receive a commission of 10 percent or 60 cents for each share sold. 8 * 8 If all of the said shares are not sold within such sixty business days, the offering shall be terminated and the full proceeds received shall be returned intact to the subscribers by the aforesaid Escrow Agent.”
Defendants urge that the agreement is illusory and lacks mutuality of obligation by virtue of a certain “ market out ” provision available only to plaintiff: “ Notwithstanding any other provision of this Agreement, the Underwriter shall have the right to terminate this Agreement at any time, without obligation for any unperformed provision hereof: (a) if prior to the effective date the Underwriter, in its absolute discretion, shall determine that market conditions or the prospects of the public offering are such as to make it undesirable or inadvisable to make or continue the public offering hereunder ’ ’.
*504 Defendants argup that plaintiff assumed no obligation under the agreement and therefore the company could and did exercise its right to terminate the broker’s authority at will prior to performance by plaintiff. It is necessary, however, to distinguish between the power to terminate an agency and liability for an improper revocation of an agency contract (Wilson Sullivan Co. v. International Paper Makers Realty Corp., 307 N. Y. 20). While the company’s obligation to pay a commission is dependent on results, yet the right to terminate prior to performance does not exist, since the agreement is for a specified term and is not unilateral.
Apart from the fact that plaintiff’s agency would appear to be irrevocable because coupled with an interest in its purchase of the shares of the common stock of the company, the value of which to plaintiff was dependent upon the public offering establishing a trading market for the company’s stock, plaintiff here explicitly undertook to act as exclusive agent and to use its best efforts. Plaintiff’s obligation to perform in good faith remained despite the quoted defeasance clause. The term 1 ‘ absolute discretion ’ ’ must be interpreted in context and means under these circumstances a discretion based upon fair dealing and good faith— a reasonable discretion. “ We think, however, that such a promise is fairly to be implied. * * * A promise may be lacking, and yet the whole writing may be ‘ instinct with an obligation, ’ imperfectly expressed. * * * If that is so, there is a contract. ’ ’ (Wood v. Duff-Gordon, 222 N. Y. 88, 90, 91.)
In Wood v. Puff-Gordon (supra) defendant claimed the contract was illusory because lacking in mutuality. But the court held that plaintiff’s acceptance of an exclusive agency for a specified term bound him to a continuing duty to use reasonable efforts, and therefore, the defendant had no right to cancel the contract. In Boston Road Shopping Center v. Teachers Ins. & Annuity Assn. of America (13 A D 2d 106, affd. 11 N Y 2d 831) it was held that a contractual requirement that defendant must be 1 ‘ satisfied ’ ’ with the leases did not render the agreement illusory; defendant could reject the leases only on reasonable grounds or, at least, good faith.
The “ market out ” provision, permitting the underwriter to withdraw prior to effective date by reason of unfavorable market conditions or prospects developing between date of agreement and effective date, must be understood in the light of the nature of its risk with respect to compensation on an “ all-or-none ” basis for its services. In the absence of a reasonable “ out ” clause, it might be compelled to use its best efforts for 60 business days in a hopeless situation without any compensation *505 whatsoever. The question as to the nature of the company’s obligation to “ use its best efforts ” to effectuate the. notification with the Securities and Exchange Commission, that is, the standards to be applied as to the company’s obligation under such an agreement is not before the court on this motion. The holding here is solely with respect to plaintiff’s obligation to exercise reasonably its discretion under the ‘ ‘ market out ” clause and the consequent determination that it does not render the agreement illusory.
Finally, defendants argue that plaintiff has failed to allege ability to perform with respect to its obligation to sell the public offering. That argument loses sight of the fact that the action is based on anticipatory breach and plaintiff does allege that it was ready, able and willing to perform.
With respect to the individual defendants, their agreement, when read, as it must be, with the underwriting agreement, clearly indicates that plaintiff was buying shares in contemplation of public trading and not a small minority interest in the shares of a close corporation. It is plaintiff’s claim that, by causing the company to break its agreement with plaintiff, these defendants simultaneously breached their agreement with it. Under the allegations of the complaint the individual defendants are charged with destroying the right of plaintiff to receive the fruits of the two agreements. (See The Kirke La Shelle Co. v. Armstrong Co., 263 N. Y. 79, 87.) The second and third causes of action herein are maintainable on that basis. The motion is denied in all respects.