MATTHEW N. MEZZANOTTE, AND WIFE, GENEVIEVE MEZZANOTTE v. JAMES J. FREELAND, AND WIFE, MAXINE H. FREELAND, DEFENDANTS

— AND —

DANIEL BOONE COMPLEX, INC., THIRD PARTY PLAINTIFF

No. 7315SC608

(Filed 28 November 1973)

1. Frauds, Statute of § 2— contract to convey land — sufficiency of description

The statute of frauds requires that any land sale contract or a memorandum thereof be put in writing and include a description of the land either certain in itself or capable of being reduced to certainty by something extrinsic to which the contract refers.

2. Frauds, Statute of § 2— contract to convey land — reference to another writing — sufficiency of description

An agreement between the parties whereby plaintiffs agreed to buy and defendants agreed to sell a particular tract of land was

sufficient to satisfy the statute of frauds where the agreement made reference to an "Attachment" which described the tract, the "Attachment" consisted of five deeds which provided an adequate description of the property, and the "Attachment," though not physically connected to the contract of sale, was delivered contemporaneously with the execution of the contract.

3. **Contracts § 4— contract for sale of land — promise of vendee to obtain loan — sufficiency of consideration**

A contract between the parties for the sale of land which was "contingent upon . . . [plaintiffs] being able to secure a second mortgage from NCNB on such terms and conditions as are satisfactory to them . . ." was a valid and enforceable contract, supported by consideration, since the contract included an implied promise by plaintiffs to use reasonable effort to procure a loan and to exercise good faith in deciding whether the terms of the loan were satisfactory.

4. **Contracts §§ 18, 20— contract for sale of land — failure to perform on time — waiver**

Where plaintiffs failed to tender performance on a contract for the sale of land within the required time limits, defendants could not claim that they were thereby relieved from performance since defendants did not furnish to plaintiffs an inventory of personalty and a list of outstanding leases in accordance with the terms of the contract, thus preventing plaintiffs from earlier compliance; furthermore, mutual agreement on a closing date some three months later than that specified in the contract constituted a waiver of any prior contractual deadlines for performance.

APPEAL by defendants from *McLelland, Judge,* 26 March 1973 Civil Session of Superior Court held in ORANGE County.

This is an action seeking specific performance of a contract of sale and damages for breach of contract.

On 2 May 1972 plaintiffs and defendants executed a contract under the terms of which plaintiffs agreed to buy and defendants agreed to sell a tract of land in Orange County, together with improvements and facilities, known as the Daniel Boone Complex. The contract set out the sales price and terms of payment which included a good faith deposit by plaintiffs of $5,000.00. It described the property being sold as:

"a certain tract or parcel of land of approximately 85 acres situate in the County of Orange, State of North Carolina, together with all appurtenant buildings and other improvements and further together with all inventory presently owned by said parties of the first part located on the herein described premises and all equipment presently necessary to efficiently maintain the enterprises presently oper-

ated by parties of the first part thereon; said parcel of real estate being more particularly described in Attachment hereof."

It was understood by the parties that the "Attachment" consisted of photocopies of five deeds which were never physically attached to the written instrument.

Among the other provisions of the 2 May 1972 agreement were the following:

"2. This agreement is contingent upon parties of the second part [plaintiff] being able to secure a second mortgage from North Carolina National Bank on such terms and conditions as are satisfactory to them in order to finance the closing and to secure additional working capital. . . .

"3. That the sale contemplated hereunder and all transfers and execution of documents in connection therewith shall be completed on the thirtieth (30th) day from the date of this Agreement, taxes to be pro rated as of the date of closing.

"4. That as an Exhibit hereto and within ten (10) days after execution hereof, parties of the first part agree to furnish by said Exhibit copies of all written leases or memoranda describing all oral leases upon any buildings or properties located upon the herein described premises. . . .

"5. Parties of the first part further agree to furnish as an additional Exhibit a full and complete inventory of all personal property and equipment located on said premises and any fixtures and buildings attached thereto and will further execute a Bill of Sale to all items described therein at the closing upon the execution of this Agreement. . . ."

On 17 June 1972 the parties executed an "Addendum" to their contract, affirming its continuing validity, extending the time for performance, and increasing the purchase price in view of the fact that additional motel units had been built.

Defendants did not furnish an inventory of personal property until August 15, and they did not furnish a list of outstanding leases until September 5.

In a letter dated 18 August 1972 defendant James J. Freeland wrote plaintiff Matthew N. Mezzanotte, "We will close out the sale of the Daniel Boone property on August 28, however, I would prefer closing it on September 5 if possible. Kindly let me know which day would be satisfactory with you. . . ." Plaintiffs agreed to the September 5, 1972 closing date. They were unable to obtain a loan from the North Carolina National Bank but raised the necessary funds through other sources and on 5 September tendered the required down payment of $200,000.00 together with note and deed of trust for the balance of the purchase price in accordance with the terms of the contract. Defendants rejected plaintiffs' tender and refused to complete the sale. Plaintiffs then brought this action.

The parties waived jury trial, and the case was heard by the court sitting without a jury.

The court made findings of fact and determined as a matter of law that the agreements executed by plaintiffs and defendants on 2 May 1972 and 17 June 1972 constituted a valid contract of sale. He further found that plaintiffs' tender of performance on 5 September 1972 was a substantial compliance with their contract obligations and that defendants' refusal to convey the property constituted a breach of their contract entitling plaintiffs to specific performance and damages which would reasonably compensate for the value of personal property previously sold by defendants and loss of profits after 5 September 1972.

From a judgment which directed defendants to convey the real and personal property described in the contract upon payment of the purchase price according to the terms of the contract and awarded $100,000.00 to plaintiffs as damages, the defendants have appealed.

*Manning, Allen & Hudson, by Frank B. Jackson and John T. Manning, for plaintiff appellees.*

*Graham & Cheshire, by Lucius M. Cheshire, for defendant appellants.*

BALEY, Judge.

In this case defendants have assigned errors which concern primarily the application of the law to facts which are not in serious dispute. There is no exception to the finding of

Mezzanotte v. Freeland

the court concerning the execution of the two agreements dated 2 May 1972 and 17 June 1972 which incorporate the terms of the proposed sale. Defendants take no exception to the findings of fact by the court that they did not supply any inventory of personalty until 15 August 1972 nor any list of outstanding leases until 5 September 1972. There is no apparent disagreement with the following specific findings of fact by the court:

"6. After May 2nd, 1972, and again after June 17th, 1972, plaintiffs made numerous requests of defendants for certification of the personalty inventory and outstanding lease information, indicating that it was essential to plaintiffs' financial and promotional programs, but did not receive it. Plaintiffs employed consultants, made operational projections for establishment of a Daniel Boone chain or franchise operation, procured a survey of the realty (the plat of Robert A. Jones, Surveyor, June, 1972, is in evidence), a title search, title insurance, formed limited partnerships for projected financing and created a closed corporation, Daniel Boone Complex, Inc., third party plaintiff in this action.

"7. The extended period for performance expired on August 1st, 1972. Neither plaintiffs nor defendants tendered performance before that date, and neither repudiated the agreement nor charged the other with breach.

*    *    *

"9. By letter of August 18th, 1972, defendants agreed to close the sale on August 28th, but expressed a preference for closing on September 5th, 1972. Plaintiffs agreed to close on September 5th."

Defendants have based their assignments of error upon three primary contentions. They contend that there is no enforceable contract of sale because

1. The description contained in the 2 May 1972 agreement was not sufficient to identify the property and comply with the statute of frauds.

2. There was no consideration on the part of plaintiffs since the liability of plaintiffs was contingent upon their ability to obtain financing satisfactory to themselves.

3. Plaintiffs did not tender payment and fulfill their obligation within the time required by the contract.

[1]  First, the statute of frauds. G.S. 22-2 provides that any land sale contract "shall be void unless said contract, or some memorandum or note thereof, be put in writing." The memorandum must contain a description of the land "either certain in itself or capable of being reduced to certainty by reference to something extrinsic to which the contract refers." *Lane v. Coe,* 262 N.C. 8, 12, 136 S.E. 2d 269, 273. It need not be a single document, but may consist of several papers. *Hines v. Tripp,* 263 N.C. 470, 139 S.E. 2d 545; *Smith v. Joyce,* 214 N.C. 602, 200 S.E. 431; *Greenberg v. Bailey,* 14 N.C. App. 34, 187 S.E. 2d 505. The papers need not be physically attached if they are connected by internal reference. *Smith v. Joyce, supra.*

[2]  Here the May 2 contract when considered together with the "Attachment" constitutes a memorandum sufficient to satisfy the statute of frauds. The contract specifically stated that the tract being sold was "more particularly described in Attachment hereof." The five deeds which constituted the "Attachment" provided an adequate description of the property, some covering the entire tract and others referring to portions of the entire tract which were obviously excluded as having been previously conveyed. There is no patent ambiguity. The surveyor was able to prepare a plat of the property which was offered in evidence. Even though the "Attachment" was not physically connected to the contract of sale, it was delivered contemporaneously with the execution of the contract, and the court found:

> "These copies had been procured by defendants' real estate agent who was present with such copies at the signing of the writing, and were, in the contemplation of the parties, attached to the writing. An accurate description of the Daniel Boone realty intended to be in part the subject of the contract of sale can be determined from these documents."

Under all the circumstances the meaning of the writing including the description is clear and certain, and it is sufficient to comply with the statute of frauds and bind the parties. *Gilbert v. Wright,* 195 N.C. 165, 141 S.E. 577.

[3]  The second contention of the defendants that the contract on May 2 was not supported by valid consideration is dependent upon the interpretation to be placed upon the promise of plaintiffs to purchase the properties in accordance with the terms of

the contract. Defendants assert that since the agreement was contingent upon the plaintiffs obtaining "satisfactory" financing from North Carolina National Bank the promise to buy was illusory and cannot constitute consideration.

It seems clear that the parties in signing the contract of sale intended to be mutually bound to comply with its terms. They understood that plaintiffs would make an honest good faith effort to acquire financing satisfactory to themselves from NCNB. The contract implies that plaintiffs would in good faith seek proper financing from NCNB and that such financing in keeping with reasonable business standards could not be rejected at the personal whim of plaintiffs but only for a satisfactory cause. Where a contract confers on one party a discretionary power affecting the rights of the other, this discretion must be exercised in a reasonable manner based upon good faith and fair play. The record here indicates that the parties so understood their obligation and that plaintiffs applied for a loan from NCNB and obtained a verbal commitment but were not able to secure the loan and arranged other financing in order to meet their obligations under the contract. A promise conditioned upon an event within the promisor's control is not illusory if the promisor also "impliedly promises to make reasonable effort to bring the event about or to use good faith and honest judgment in determining whether or not it has in fact occurred." 1 Corbin on Contracts, § 149, at 659. The implied promise is enforceable by the promisee, and it constitutes a legal detriment to the promisor; therefore it furnishes sufficient consideration to support a return promise. In *Helicopter Corp. v. Realty Co.*, 263 N.C. 139, 147, 139 S.E. 2d 362, 368, our court approved this language concerning consideration:

> "It has been held that 'there is a consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not.' "

Although there are no North Carolina cases specifically in point, courts in other jurisdictions have recognized that a conditional promise may be accompanied by an implied promise of good faith and reasonable effort, and that it need not be illusory.

---

Mezzanotte v. Freeland

---

For example, in *Jay Dreher Corp. v. Delco Appliance Corp.,* 93 F. 2d 275 (2d Cir. 1937), defendant granted plaintiff a franchise to sell its products in a certain territory. Plaintiff agreed to sell these products and build up defendant's business in the specified territory. Defendant reserved the right to reject any order sent in by plaintiff, and plaintiff contended that this made defendant's promise illusory. In an opinion by Judge Learned Hand, the court held that the contract was supported by consideration, finding an implied promise "that the defendant will use an honest judgment in passing upon orders submitted." *Id.* at 277.

In *Commercial Credit Co. v. Insular Motor Corp.,* 17 F. 2d 896 (1st Cir. 1927), defendant, an automobile dealer, agreed to sell plaintiff all the time sales obligations of its customers for two years, and plaintiff agreed to purchase these obligations. The contract provided that plaintiff would purchase only "acceptable" time sales obligations. The court rejected defendant's contention that the contract lacked consideration. It held that the contract did not allow plaintiff to refuse arbitrarily to purchase defendant's obligations. "Acceptable does not mean acceptable by whim; it means acceptable within the usual business meaning of the word as applied to this kind of business dealings." *Id.* at 899-900.

In *Richard Bruce & Co. v. J. Simpson & Co.,* 40 Misc. 2d 501, 243 N.Y.S. 2d 503 (Sup. Ct. 1963), plaintiff agreed to underwrite a public offering of defendant's stock, and defendant agreed to pay plaintiff a commission. Defendant violated the agreement, and plaintiff sued for breach of contract. Defendant asserted that the contract was void for lack of consideration, pointing to a provision allowing plaintiff to terminate the contract if it "in its absolute discretion, shall determine that market conditions or the prospects of the public offering are such as to make it undesirable or inadvisable." The court held the contract enforceable, stating that plaintiff's discretion was only "a discretion based upon fair dealing and good faith—a reasonable discretion." *Id.* at 504, 243 N.Y.S. 2d at 506.

Several cases have upheld the validity of contracts quite similar to the one involved in the present case. In *Mattei v. Hopper,* 51 Cal. 2d 119, 330 P. 2d 625 (1958), plaintiff agreed to buy a tract of land from defendant. The contract provided that it was "[s]ubject to Coldwell Banker & Company obtaining leases satisfactory to the purchaser." The court held that plain-

tiff was bound by an implied promise to use good faith in determing whether Coldwell Banker's leases were "satisfactory." Therefore, his promise was not illusory and the contract was enforceable.

In *Kays v. Brack,* 350 F. Supp. 1243 (D. Idaho 1972), plaintiffs agreed to lease a tract of land and buy some corporate stock from defendants. The contract provided: "The Buyer's agreement to purchase is contingent upon the buyer being able to secure financing acceptable to the buyer, and if the buyer is unable, despite his best efforts, to obtain such financing within 10 days after all sellers have signed this agreement, the buyer shall notify the sellers and either party shall have the right to cancel this transaction." The court held that plaintiffs' promise was not illusory, since they were required to use their best efforts to obtain financing. A similar case is *White & Bollard, Inc. v. Goodenow,* 58 Wash. 2d 180, 361 P. 2d 571 (1961).

Most closely in point is *Sheldon Simms Co. v. Wilder,* 108 Ga. App. 4, 131 S.E. 2d 854 (1963). Here plaintiff entered into a contract to purchase real property from defendant. The contract provided: "This contract is contingent upon the purchaser's ability to obtain loan on said property of $24,000.00 with maximum interest of 6¼ percent per annum, for a maximum period of twenty years." The court held that the contract was valid and supported by consideration. Plaintiff was required to make "a diligent effort" to obtain a loan. *Id.* at 5, 131 S.E. 2d at 855. He could not frustrate the contract by deciding at whim not to get a loan.

All of these cases tend to indicate that the agreement signed on 2 May 1972 by the Mezzanottes and the Freelands was a valid and enforceable contract, supported by consideration. The contract included an implied promise by the Mezzanottes to use reasonable effort to procure a loan and to exercise good faith in deciding whether the terms of the loan were satisfactory.

[4] Finally, defendants contend that plaintiffs failed to fulfill their obligations under the contract by securing a loan from NCNB and tendering performance within the required time limits, thereby relieving them from any obligation to perform under the contract. Plaintiffs obtained other financing and the failure to acquire financing through NCNB was not detrimental to the interests of defendants. The court found that the defendants did not furnish to plaintiffs an inventory of personalty and

a list of outstanding leases in accordance with the terms of the contract and prevented the plaintiffs from earlier compliance. "One who prevents the performance of a condition, or makes it impossible by his own act, shall not take advantage of the nonperformance." *Navigation Co. v. Wilcox,* 52 N.C. 481, 482 (Pearson, C.J.) ; *accord, Mullen v. Sawyer,* 277 N.C. 623, 178 S.E. 2d 425; *Bank v. Supply Co.,* 226 N.C. 416, 38 S.E. 2d 503; *Barron v. Cain,* 216 N.C. 282, 4 S.E. 2d 618; *Harwood v. Shoe,* 141 N.C. 161, 53 S.E. 616; *Ashcraft v. Allen,* 26 N.C. 96 (Ruffin, C.J.) ; Restatement of Contracts § 295 (1932) ; 3A Corbin on Contracts, § 767.

The trial court also found that all parties had agreed to the closing date of 5 September 1972, and, by their conduct and mutual agreement, had waived any prior contractual deadlines for performance. We are in accord.

Plaintiffs are entitled to specific performance of the contract of sale and damages for any losses they have sustained. The judgment of the trial court is affirmed.

Affirmed.

Judges PARKER and HEDRICK concur.