**AMERICAN BRANDS, INC., Plaintiff-Appellant,**

v.

**PLAYGIRL, INC., Defendant-Appellee.**

No. 1041, Docket 74–1357.

United States Court of Appeals,
Second Circuit.

Argued May 1, 1974.

Decided June 3, 1974.

manufacturer and distributor of tobacco products. Playgirl is a California corporation which commenced the publication of Playgirl Magazine in May, 1973. The magazine has a current circulation of about 2,000,000 copies, a rapid increase from its initial publication of about 600,000. Playgirl boasts that its publication is "Unconventional. Unprecedented. Unparalleled.", and that it alone delivers the "young, affluent and malleable female audience for your advertising message."

On February 13, 1974, American commenced an action against Playgirl in the Supreme Court, State of New York, County of New York, seeking a declaratory judgment as well as injunctive relief. The case was removed on February 27, 1974, to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §§ 1441 & 1446. On March 4, 1974, American obtained an order to show cause seeking a preliminary injunction. After oral argument before Judge Brieant on March 6, 1974, the injunction was denied. Judge Brieant found that the case presented "fair grounds for litigation. That is close to the question of probability of success." He also held there was no showing of irreparable harm which would justify a mandatory injunction since money damages would be adequate. He determined that the equities tipped in favor of Playgirl and further indicated his willingness to provide the parties a speedy trial.

American claims that on January 26, 1973, Playgirl entered into a contract for the placement of American's advertisements on the back cover of Playgirl Magazine. Playgirl had contracted with the Carl Vann Company to solicit orders for advertisements for the new magazine. Vann negotiated the contract at issue, which reserved eight back covers of Playgirl for the advertising of Tareyton cigarettes, manufactured by American. The contract, apparently a form agreement provided by American, had two clauses specifically typed in.

Daniel J. O'Neill, New York City (Chadbourne, Parke, Whiteside & Wolff, New York City, P. G. Pennoyer, Jr., New York City, of counsel), for plaintiff-appellant.

Eric T. S. Chung, Los Angeles, Cal. (Kirschstein, Kirschstein, Ottinger & Frank, P. C., Peter T. Cobrin, New York City, on the brief), for defendant-appellee.

Before WATERMAN, FRIENDLY and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal by the plaintiff American Brands, Inc. (American) from an order of the United States District Court, Southern District of New York, Hon. Charles L. Brieant, Jr., entered March 8, 1974, denying American's motion for a preliminary injunction seeking to enjoin the defendant, Playgirl, Inc. (Playgirl), from refusing to publish American's advertisement on the back cover of its magazine and from accepting other advertisements for its back cover. Affirmed.

American, formerly known as the American Tobacco Company, is a New Jersey corporation which is basically a

One, appearing on the back of the form, provided:

> YOUR ACCEPTANCE BELOW OF THIS AGREEMENT SHALL ALSO SERVE TO ACKNOWLEDGE OUR UNDERTSANDING [SIC] THAT WE HAVE THE CONTINUING AND IRREVOCABLE RIGHT, AT OUR OPTION, TO BUY THE BACK COVER OF PLAYGIRL EACH AND EVERY TWELVE MONTH PERIOD, FOR EACH ISSUE OF PLAYGIRL WITHIN THAT PERIOD, FOR AS LONG A TIME AS PLAYGIRL SHALL CONTINUE TO BE PUBLISHED.

The contract also contained a clause which provided: "We reserve a cancellation privilege as to the use of this space." That sentence was followed by a typed-in sentence which read: "WE HAVE THE RIGHT TO CANCEL THE SUBSEQUENT ISSUES WITHOUT PENALTY IF THE PREMIERE ISSUE IS UNSATISFACTORY TO US." Playgirl published American's advertisements on the back cover of each of its first 11 issues commencing in June, 1973, and further agreed to accept American's advertisement for the last issue of the first publication year, May, 1974.

By letter dated September 25, 1973, Vann advised American that it was against the policy of Playgirl to afford an advertiser "a position of protection in perpetuity." Playgirl repeated its position in a letter to American dated December 3, 1973, indicating that it had elected to diversify its back cover advertisers. By letter dated December 20, 1973, Playgirl stated that this policy would be effective with the June, 1974 issue.

■ The standard which governs the trial court in the determination of whether or not a preliminary injunction should issue is whether or not the moving party has carried the burden of clearly demonstrating a combination of either probable success on the merits and the possibility of irreparable damage, or the existence of serious questions going to the merits and the tipping of the balance of hardships sharply in its favor. Sonesta Int'l Hotels Corp. v. Wellington Associates, 483 F.2d 247, 250 (2d Cir. 1973); Pride v. Community School Bd., 482 F.2d 257, 264 (2d Cir. 1973).

The court below in denying injunctive relief placed its greatest emphasis on the failure of the plaintiff to establish that its injury was not compensable by an award of monetary damages. The court observed that Playgirl is not unique, that there are other magazines and other back pages, and it suggested that American's damages should be limited to the difference, if any, between the rates paid at Playgirl and those payable elsewhere. Since every magazine reaches a slightly different audience, American suggests that it would be impossible to "cover" by finding a suitable replacement. A requirement that advertisers seek relief through money damages, American argues, would permit periodicals to dishonor long-term advertising contracts with impunity.

■ On appeal, American insists that back cover advertising space is not fungible, and that Playgirl alone and uniquely provides an advertising audience composed of young, malleable and affluent females. In proof of this proposition, American only provides us with the understandably exuberant puffing of Playgirl's vice president, which touts the periodical as standing alone among magazines for women. To further justify the granting of an injunction, American states in its brief on appeal that Playgirl has suggested no basis upon which American might calculate its loss in monetary terms. Since monetary damages cannot be calculated, American argues, an injunction is required to avoid irreparable injury. See Interphoto Corp. v. Minolta Corp., 417 F.2d 621, 622 (2d Cir. 1969). However, the burden of establishing its right to relief here is clearly upon American (Robert W. Stark, Jr., Inc. v. New York Stock

Exchange, 466 F.2d 743, 744 (2d Cir. 1972) (*per curiam*)), and Playgirl does not have the initial obligation of establishing that monetary damages are an appropriate remedy. While we fail to share the confidence of the court below that American's loss can be ultimately measured by the difference between advertising rates at Playgirl and those at some other comparable periodical, we do not find that American has, on the record before us, established that Playgirl is unique.

■ ■ It would appear to be basic that American is obligated to mitigate its damages. If American can reasonably place its advertising on the back pages of other periodicals of comparable circulation, it would seem likely that its profits picture would be the same whether the tobacco consumers are malleable young ladies or more jaded aging males. If it had been shown that such advertising space is not readily available because of commitments to other national advertisers, American might well have established a case for equitable intervention, but the record before us is barren of any such proof. Again, American might have been able to demonstrate that Playgirl's readership is distinctly advantageous to it and that it cannot be reached by other media. However, except for Playgirl's own rodomontade, we have no documentation or proof that this is so. There is nothing in the record before us to indicate what segment of the populace is titillated by Playgirl and why in any event it is not susceptible to the lure of tobacco by American's blandishment in other and more pedestrian periodicals. The record does not indicate whether American's advertising was prepared particularly for Playgirl and its alleged audience of affluent malleables. The record contains no samples of American's advertisements and no copy of Playgirl. This reticence is perhaps explainable because of the claim of the plaintiff that Playgirl is not a magazine which everyone may find acceptable. In sum, we conclude that, on the basis of the record before the court, the trial judge did not err in holding that American had failed to establish clearly that its damages cannot be calculated and that consequently it cannot be made whole by monetary relief.

■ American has further failed to clearly establish that it will probably succeed on the merits. The trial court commented that it came close, but this is not enough absent a heavy tipping of the equities in its favor. Pride v. Community School Bd., *supra*, 482 F.2d at 264.

At this stage of the proceeding, we need not definitively determine the merits of the contract claim or evaluate all of the weaknesses attributed to it by Playgirl. See Exxon Corp. v. City of New York, 480 F.2d 460, 464 (2d Cir. 1973); United States v. Brown, 331 F. 2d 362, 364–365 (10th Cir. 1964); American Federation of Musicians v. Stein, 213 F.2d 679, 683 (6th Cir.), cert. denied, 348 U.S. 873, 75 S.Ct. 108, 99 L. Ed. 687 (1954); Benson Hotel Corp. v. Woods, 168 F.2d 694, 696–697 (8th Cir. 1948). American's brief claims that the only true issue raised by Playgirl was the question of the authority of Mr. Vann of the Carl Vann Company personally to bind it by contract. American asserts that Playgirl permitted him to describe himself as Advertising Director on its letterhead. The defendant counters that Vann was not an employee but rather an independent contractor, and he is so described in the contract entered into between Playgirl and Carl Vann Company. Whether his authority included the power to commit Playgirl's back page to American *in perpetuo* is not clear. Whether Playgirl's policy against such eternal vows of fidelity developed only after its success had been established, and whether such arrangements are unusual in the publishing business are issues to be determined upon trial. Likewise, the assertion by American that Playgirl in fact ratified the contract in any event by continuing

to accept American's advertisements, and the claim by Playgirl that it never even saw a copy of the agreement until the fall of 1973 are questions of fact which affect the merits and are not readily answerable at this stage of the litigation.

Playgirl, perhaps appropriately, claims that the arrangement was in any event *nudum pactum* since an absolute right to cancel was retained by American. Playgirl relies, *inter alia*, upon Miami Coca-Cola Bottling Co. v. Orange Crush Co., 296 F. 693 (5th Cir. 1924), which represents a line of authority received with something less than enthusiasm in this circuit in Sylvan Crest Sand & Gravel Co. v. United States, 150 F.2d 642, 644–645 (1945). Cf. Richard Bruce & Co. v. J. Simpson & Co., 40 Misc.2d 501, 243 N.Y.S.2d 503 (Sup.Ct.1963). See also J. Calamari & J. Perillo, Contracts § 70 (1970) ; 1A A. Corbin, Contracts § 163 (1963). American contends that its right of cancellation is not absolute but was limited to its dissatisfaction with the premiere issue. Whether the right to cancel survived, and whether other consideration to support the contract was given may again depend upon the custom and practice of the advertising and publishing business. The contract is in the form of a brief letter agreement contained on one page with but a single additional paragraph on the back. It provides few details and the interstices must be supplied by evidence of business practice not present in the evidence before us. In short, we cannot say that the plaintiff has made a clear showing of probable success at this stage of the proceedings. The speedy trial which has been promised below provides the proper forum for determining these issues.

Finally, we note that American has failed to persuade us that, even short of probable success, it is nonetheless entitled to injunctive relief because the equities tip strongly in its favor. Dino DeLaurentiis Cinematografica, S. p.A. v. D–150, Inc., 366 F.2d 373 (2d Cir. 1966). American urges that denial of the injunctive relief sought will irreparably injure its commercial good will. However, the case upon which it relies (Dino DeLaurentiis Cinematografica, S. p.A., *supra*) is distinguishable. There, a new motion picture film process was to be utilized for the exhibition of a particular motion picture, "The Bible." It was alleged that the contract bound the producer to exclusively utilize this process in the exhibition of the film. The loss of the opportunity to launch the heavily advertised new process with the particular motion picture provided in the contract was found by this court to create public confusion, with resultant loss of credibility and good will which were not monetarily compensable. Here, of course, the relationship between American and Playgirl was not monogamous. No trade or public identification of American with Playgirl has been established. Neither is there any claim that the marketing of some new tobacco product has been frustrated by the unavailability of Playgirl's back page. On the other hand, forcing Playgirl to leave the back page blank or accepting American's material rather than that of other advertisers, who have presumably entered into arrangements with Playgirl, would obviously force losses and litigation upon the publisher.

While other issues have been raised, they need not be considered. The judgment of the court below is affirmed.