SIRSI CORPORATION, doing business as SirsiDynix, Plaintiff,

v.

CRAVEN–PAMLICO–CARTERET REGIONAL LIBRARY SYSTEM, Defendant.

No. 4:11–CV–59–BO.

United States District Court, E.D. North Carolina, Eastern Division.

Sept. 29, 2011.

---

Robert T. Numbers, II, Womble, Carlyle, Sandridge & Rice, Raleigh, NC, for Plaintiff.

Lee W. Bettis, Jr., The Bettis Law Firm, New Bern, NC, for Defendant.

## *ORDER*

TERRENCE WILLIAM BOYLE, District Judge.

This matter is before the Court on Defendant Craven–Pamlico–Carteret Regional Library System ("CPC Regional")'s Motion to Dismiss Pursuant to Rule 12(b)(6) [DE 7], seeking to dismiss Plaintiff's claims for breach of contract. Plaintiff Sirsi Corporation ("Sirsi") responded on July 22 [DE 15] and CPC Regional replied on July 26 [DE 17]. Because Sirsi's complaint states a plausible claim for relief, CPC Regional's Motion to Dismiss is DENIED.

## *BACKGROUND*

As pleaded in Sirsi's complaint, the facts relevant to the instant Motion are as follows:

On February 3, 2009, representatives from Sirsi and CPC Regional discussed CPC Regional's needs with respect to library management tools. At the time of this conversation, CPC Regional was using a Sirsi product and requested a quote on transitioning to another Sirsi product, known as the Symphony system. Two days later, Sirsi provided the quote to CPC Regional. On April 27, Sirsi and CPC Regional entered into a Master Software License and Services Agreement ("Master Agreement"), which provided CPC Regional a limited, nonexclusive, personal, non-transferable license to use the software in its libraries. Sirsi also agreed to provide implementation, maintenance,

and upgrading services related to the new software. In exchange for the license and services provided by Sirsi, CPC Regional agreed to pay $146,844.80 over the three-year term of the Master Agreement. After signing the Master Agreement, CPC Regional requested a delay in implementation of the Symphony system due to budgetary restraints. Sirsi agreed to the delay.

In its subsequent attempts to proceed with implementation, Sirsi alleges that CPC Regional failed to respond to Sirsi's requests or pay the amounts due under the Master Agreement. CPC Regional also engaged in negotiations with Online Computer Library Center, Inc. ("OCLC"), a competitor of Sirsi's. In late 2009, CPC Regional entered into an agreement with OCLC to use its library management system software. In November 2010, the Director of CPC Regional contacted Sirsi to terminate their working relationship in light of CPC Regional's contract with OCLC. On February 14, 2011, Sirsi notified CPC Regional that it was in breach of the Master Agreement and requested that it cure the breach. Sirsi filed its complaint in this Court on April 15 [DE 1]. CPC Regional answered the complaint and filed counterclaims on June 16 [DE 6]. It filed the instant Motion to Dismiss on June 17 [DE 7].

## DISCUSSION

■ In order to withstand a motion to dismiss, a complaint must allege sufficient facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 1951, 173 L.Ed.2d 868 (2009). Because Sirsi's complaint provides facts that, if taken as true, make out a plausible claim for breach of contract, CPC Regional's Motion to Dismiss is denied.

■ Sirsi first suggests that this motion must be denied because CPC Regional violated Local Civil Rule 7.1(d) by failing to file a supporting Memorandum of Law with its Motion to Dismiss. CPC Regional admits the defect, but cured it eighteen days later and no prejudice appears to have accrued against Sirsi as a result. This Court may deny a Motion to Dismiss for failure to comply with Local Rule 7.1(d), but where the non-moving party has not been prejudiced and the defect was cured, the Court may, in its discretion, decide the Motion on the merits in the interest of justice and judicial efficiency. *Curley v. Adams Creek Associates,* No. 4:08–CV–21–H, 2010 WL 4065484, at *2 (E.D.N.C. Oct. 15, 2010). Further violations of this requirement will be dealt with appropriately.

■ To state a claim for breach of contract under North Carolina law, "the complaint must allege that a valid contract existed between the parties, that defendant breached the terms thereof, the facts constituting the breach, and that damages resulted from such breach." *Claggett v. Wake Forest University,* 126 N.C.App. 602, 486 S.E.2d 443, 446 (1997). For the purposes of this motion, CPC Regional concedes that a contract exists between itself and Sirsi [DE 9 at 8]. CPC Regional does not contest that Sirsi incurred damages, and the only dispute arises as to whether CPC Regional breached the contract and therefore caused those damages.

■ Sirsi argues that CPC Regional breached the Master Agreement by failing to respond to its communications and by failing to proceed with the software implementation process. CPC Regional contends that, because the "Go Live Date" specified in the contract was never reached, it could not have breached the contract. However, the fact that the Go Live Date had not yet occurred could not,

practically speaking, have been a condition precedent to CPC Regional's performance. Within the Master Agreement, both parties promised to perform consultations before any software went live [DE 15–1 at 4]. Therefore, assuming the facts pleaded by Sirsi to be true, it was a condition that CPC Regional itself made impossible by its non-communication with Sirsi and its non-participation in the discussions required to make the software available. In North Carolina, "[o]ne who prevents the performance of a condition, or makes it impossible by his own act, shall not take advantage of the non-performance." *Mezzanotte v. Freeland,* 20 N.C.App. 11, 200 S.E.2d 410, 416 (1973). Therefore, CPC Regional's contention that the Go Live Date had not yet arrived does not excuse its non-performance and does not defeat Sirsi's plausible claim for relief in breach of contract.

Sirsi also points to a number of other ways in which CPC Regional failed to perform its obligations under the contract, including its failure to engage in consulting calls and to meet with Sirsi representatives in the run-up to the Go Live Date. Further, payments were due to Sirsi at various times in the implementation process: some at the time of execution of the agreement, some at the time of delivery of hardware to CPC Regional, and some at the Go Live Date [DE 15–1 at 20]. Although both parties concede that the implementation process was delayed due to funding issues, the Master Agreement states that such delays postpone, but do not excuse, deadlines and payments [DE 15–1 at 4]. If this failure to participate in the implementation process is taken as true, a plausible claim for relief exists.

Alternatively, Sirsi claims that CPC Regional breached the Master Agreement by repudiation. In North Carolina, repudiation is "a positive statement by one party to the other party indicating that [it]

will not or cannot substantially perform [its] contractual duties." *Millis Constr. Co. v. Fairfield Sapphire Valley, Inc.,* 86 N.C.App. 506, 358 S.E.2d 566, 569 (1987). As alleged by Sirsi, CPC Regional "informed SirsiDynix that due to its contract with OCLC, CPC Regional would no longer be working with SirsiDynix" [DE 15 at 5]. Assuming for purposes of this Motion that such a statement was made, Sirsi would have a plausible claim for breach of contract by repudiation.

To the extent that CPC Regional relies on vagueness as to the Go Live Date within the Master Agreement, ambiguities in contractual language must be resolved and the contract interpreted by the fact finder. *Int'l Paper Co. v. Corporex Constructors,* 96 N.C.App. 312, 385 S.E.2d 553, 556 (1989). Based on the language of the contract alone, it cannot be said as a matter of law that no duty to perform had arisen for CPC Regional. CPC Regional's argument that this contract is illusory and unenforceable due to this alleged ambiguity must fail, taking as true the facts as pleaded by Sirsi. Although the parties concededly agreed on a delay in performance on the contract, such an agreed-upon postponement does not render an otherwise valid contract illusory, given that such delays were contemplated by the Master Agreement [DE 15–1 at 4]. Therefore, interpretation of any ambiguity in the terms of the Master Agreement will be left to litigation.

### CONCLUSION

For the aforementioned reasons, CPC Regional's Motion to Dismiss [DE 7] is DENIED.