**FARBENFABRIKEN BAYER A.G.,**
**Plaintiff,**

v.

**NATIONAL DISTILLERS AND CHEM-**
**ICAL CORPORATION, Defendant.**

**No. 70 Civ. 3214.**

United States District Court,
S. D. New York.

March 18, 1971.

---

Burgess, Dinklage & Sprung, New York City, for plaintiff; Arnold Sprung, New York City, of counsel.

Breed, Abbott & Morgan, New York City, Sughrue, Rothwell, Mion, Zinn & Macpeak, Washington, D. C., for defendant; Edward J. Ross, New York City, Thomas J. Macpeak, Washington, D. C., of counsel.

EDWARD WEINFELD, District Judge.

Plaintiff, Farbenfabriken Bayer A. G. (hereafter "Bayer"), and the defendant, National Distillers and Chemical Corporation (hereafter "National"), are involved in a series of litigations centering about two patents, one owned by Bayer and the other by National. The two patents relate to a process for making vinyl acetate by reacting ethylene, acetic acid and oxygen in the presence of a Group VIII noble metal catalyst, including palladium. Bayer's method is a liquid phase process and National's is a vapor phase process. National has a plant in Houston, Texas, where it manufactures vinyl acetate, using the vapor phase process covered by its patent. Celanese Corporation (hereafter "Celanese") manufactures vinyl acetate at its plant at Clear Lake, Texas, under a license issued by Bayer. Both the National and the Celanese plants are located within the Southern District of Texas.

(a) The three Texas actions.

On November 7, 1969, while Celanese was engaged in constructing its plant at Clear Lake, Texas, and before it commenced operations, National commenced an action in the Southern District of Texas against Celanese for a declaratory judgment that the process Celanese intended to use would infringe National's patent, and for an injunction to enjoin the completion and operation of the Celanese plant. On March 23, 1970, after the completion of the Celanese plant and after production had begun, National commenced another action against Celanese in the Texas court charging patent infringement. On June 29, 1970, Bayer brought an action against National in the Southern District of Texas for infringement of Bayer's patent, and on July 27 National answered and, in addition to affirmative defenses, asserted a counterclaim against Bayer for actively inducing Celanese to infringe National's patent.

(b) The action in this District.

On the same day that National asserted its counterclaim against Bayer in the Texas action, Bayer commenced this suit against National for a declaratory judgment that the Bayer *process* does not infringe National's patent and that the

National patent is invalid.[1] Thereafter, Bayer moved in its action in the Southern District of Texas to dismiss, stay or transfer to this court National's counterclaim against Bayer. To perfect the symmetry of the litigation, National now moves to dismiss this action or to stay it pending final disposition of the issues in the three Texas actions, or alternatively to transfer the action pursuant to section 1404(a), Title 28, United States Code.

■ Bayer, in its opposition to the various branches of National's motion, contends that the sole issue is whether to allow "a counterclaim [National's] filed in a different action in Texas to proceed in preference to the instant action." However, the issues to be considered on this motion are much broader. They concern not only the immediate parties, but the courts and the effective and expeditious administration of justice. It is a simple truism that where various litigations present the same or substantially related issues, "[a] single trial will avoid duplication of judicial time and effort and likewise conserve the time of the parties, witnesses and counsel, and eliminate additional expense incident to several trials."[2]

■ Moreover, while the identity of the issue presented by the various actions is of significance with respect to that branch of the defendant's motion which seeks a stay[3] or dismissal of this action under the court's discretionary power under the Declaratory Judgment Act,[4] other factors are also to be considered with respect to the alternative relief requested under section 1404(a).[5]

■ The court is of the view that the defendant has made a substantial showing on all branches of its motion; however, under the circumstances here presented, rather than dismissal or stay of this action, the interests of justice and of the parties would be better served by its transfer to the Texas district, thereby permitting the parties to take whatever action may be indicated with respect to their various positions.

Bayer concedes the identity of issues presented by National's counterclaim in Bayer's Texas action with those presented by Bayer in this action for a declaratory judgment, but contends that these issues are not related to those raised by its complaint in the Texas action. It asserts that its complaint there charges that National's operation of its plant in Texas constitutes infringement of the Bayer patent, whereas in the instant action it seeks only to protect its "process", and the issue is whether or not the Bayer "process" infringes National's patent. Also it contends that there is no relationship between the issues raised in the two Texas actions brought by National against Celanese and the issues

1. National also commenced a suit in this District against Bayer and others, charging violations of the antitrust laws. Despite Bayer's position to the contrary, that action presents much broader and different issues.

2. Ronson Art Metal Works, Inc. v. Brown & Bigelow (Inc.), 105 F.Supp. 169, 172 (S.D.N.Y.), aff'd on opinion below, 199 F.2d 760 (2d Cir. 1952).

3. Kerotest Mfg. Co. v. C-O-Two Equipment Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952); Mattel, Inc. v. Louis Marx & Co., 353 F.2d 421 (2d Cir. 1965), cert. dismissed, 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546 (1966); Deering Milliken, Inc. v. Koratron Co., 293 F.Supp. 518, 520-521 (S.D.N.Y. 1968); Ronson Art Metal Works, Inc. v. Brown & Bigelow (Inc.), 105 F.Supp. 169 (S.D.N.Y.), aff'd on opinion below, 199 F.2d 760 (2d Cir. 1952).

4. Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (Feb. 23, 1971); Brillhart v. Excess Ins. Co., 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); Hammett v. Warner Bros. Pictures, Inc., 176 F.2d 145, 148, 149 (2d Cir. 1949); Carbide & Carbon Chem. Corp. v. United States Indus. Chemicals, Inc., 140 F.2d 47, 49 (4th Cir. 1944); Binks Mfg. Co. v. Spee-Flo Mfg. Corp., 164 U.S.P.Q. 475 (N.D.Ill.1970).

5. Schneider v. Sears, 265 F.Supp. 257, 263 (S.D.N.Y.1967); Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung, 250 F. Supp. 744, 754 (S.D.N.Y.1966).

raised in the Texas action brought by Bayer against National. But a fair reading of the pleadings indicates the three Texas actions involve issues of the validity of both the Bayer and National patents and issues of whether the process covered by one infringes upon the other. These same issues are also inherent in this action. Indeed, unless this is so, it is difficult to understand the basis upon which Bayer in this action seeking a declaratory judgment that its process does not infringe National's patent, also seeks to enjoin National from prosecuting in Texas the two actions commenced against Celanese, Bayer's licensee. Notwithstanding Bayer's contention to the contrary, the issues in the various lawsuits are hinged to the two patents and are so intertwined and related thereto that they should be decided in a single suit, at least with respect to these immediate parties.[6] This is, therefore, very much a case where a transfer is indicated "in order to prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts by the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues,"[7] and the "strong policy favoring the litigation of related claims in the same tribunal" applies.[8]

The factors to be considered under section 1404(a)[9] indicate that that tribunal is the Southern District of Texas, where the first lawsuits involving the patent were filed,[10] all of which preceded the instant action. National and Bayer's licensee, Celanese, allegedly the only licensee of Bayer in the United States, have their manufacturing plants in that district. It is stated without contradiction that discovery already undertaken in the actions in which National and Celanese are parties involves hundreds of thousands of documents. The pertinent National documents are located in Houston, where it has its plant, and in Cincinnati, where it has a research center. Celanese documents are located either in Houston, where it has its plant, or Corpus Christi, where it has its research center. These thousands of documents are being assembled for the purpose of the Celanese litigation, and in this circumstance the factor of convenience strongly favors transfer. In this action no discovery proceedings have thus far been had by either party.

While witnesses are located both in this district, the Texas district and elsewhere, the principal National and Celanese witnesses, as to the technical aspects of the two patents and related questions, are either in Cincinnati or Texas and the inventor of the National patent resides in South Carolina, from which Texas is not much further than New York. Moreover, the witnesses, including those Bayer witnesses who reside in Germany, must travel to Texas in any event in connection with Bayer's infringement action there. It is hardly likely that in a matter of this substance the parties would be satisfied upon trial to rely upon depositions of knowledgeable persons and thus deprive the court of the benefit of demeanor evidence.

6. Moreover, there may be available an opportunity to consolidate the actions in which Bayer and National are the immediate litigants with those in which Celanese, Bayer's licensee, is also a party. General Tire & Rubber Co. v. Watkins, 373 F.2d 361, 369 (4th Cir. 1967).

7. General Tire & Rubber Co. v. Watkins, 373 F.2d 361, 362 (4th Cir. 1967).

8. Schneider v. Sears, 265 F.Supp. 257, 266, 267 (S.D.N.Y.1967). See also Freiman v. Texas Gulf Sulphur Co., 38 F.R.D. 336 (N.D.Ill.1965) ; Axe-Houghton Fund

A, Inc. v. Atlantic Research Corp., 227 F.Supp. 521, 523 (S.D.N.Y.1964) ; Rodgers v. Northwest Airlines, Inc., 202 F. Supp. 309, 312 (S.D.N.Y.1962).

9. It is not denied that this action "might have been brought" in the Southern District of Texas, where National is licensed to do and is doing business, 28 U.S.C. § 1391(c).

10. See Mattel, Inc. v. Louis Marx & Co., 353 F.2d 421 (2d Cir. 1965), cert. dismissed, 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546 (1966).

The relative calendar conditions in the Southern District of Texas and this district, while not controlling, are "an important factor" on a motion to transfer.[11] It will probably take almost two and one-half years to reach the trial calendar in this district and twelve months in the proposed transferee district.[12]

Upon all the facts, "the interests of justice" warrant transfer, and this branch of the motion is granted; the motions to dismiss or stay the action are denied.

11. Parsons v. Chesapeake & O. Ry., 375 U.S. 71, 73, 84 S.Ct. 185, 11 L.Ed.2d 137 (1963); A. Olinick & Sons v. Dempster Bros., Inc., 365 F.2d 439, 445 (2d Cir. 1966); Schneider v. Sears, 265 F.Supp. 257, 267 (S.D.N.Y.1967).

12. See the Annual Report of the Director of the Administrative Office of the United States Courts for the Fiscal Year Ending June 30, 1970 at II–58.