**ALUMINUM COMPANY OF AMERICA et al., Plaintiffs,**

**v.**

**FEDERAL TRADE COMMISSION et al., Defendants.**

**No. 75 Civ. 17.**

United States District Court,
S. D. New York.

Feb. 5, 1975.

302

Weil, Gotshal & Manges, New York City, for plaintiffs; Ira M. Millstein, Mark A. Jacoby, Salem M. Katsh, New York City, of counsel.

Paul J. Curran, U. S. Atty., S. D. New York, New York City, for United States; William S. Brandt, Asst. U. S. Atty., Calvin J. Collier, Gen. Counsel, F. T.C., Gerald Harwood, Asst. Gen. Counsel, F.T.C., James P. Timony, Washington, D. C., William A. Cerillo, Alexandria, Va., Warren S. Grimes, and Bruce G. Freedman, Washington, D. C., F.T.C., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs, twelve corporations, commenced this class action on behalf of

themselves and all other corporations similarly situated against the Federal Trade Commission and its members ("Commission") and the Comptroller General of the United States. The plaintiffs' claims, among others, are that the Commission, in adopting an information gathering program ("LB Program") requiring Annual Line of Business Reports ("LB Forms") from corporations,[1] and in implementing and attempting to implement the program, exceeded its authority under the Federal Trade Commission Act,[2] and violated the Fourth and Fifth Amendments to the Federal Constitution; the Federal Reports Act;[3] the Administrative Procedure Act;[4] section 1905 of the United States Criminal Code;[5] section 103 of the Budget and Accounting Procedure Act of 1950;[6] and section 9 of the Census Act.[7] Plaintiffs seek, in addition to other relief, a judgment enjoining the Commission from implementing the LB Program.

The purpose of the LB Program is to enable the Commission to publish aggregate financial data for various industries derived from information contained in the LB Forms to be submitted by leading manufacturing firms for each of their "lines of business" as defined by the Commission. The Commission's objectives, as stated by it, are (1) to effectuate and foster resource allocation by competitors and potential competitors, investors, labor groups and others; and (2) to enable the Commission to pinpoint non-competitive markets for law enforcement purposes.

The twelve named plaintiffs and the companies on whose behalf the action is asserted to be brought are 345 of the leading manufacturing companies of the United States, each of whom the Com-

mission served with an Order to File Special Report ("Order") requiring the submission of certain financial data. The matter now before the court is a motion by the twelve plaintiffs for preliminary injunctive relief pending the decision of a motion for class action determination, which motion has yet to be argued. The motion for injunctive relief, the plaintiffs explain, is addressed only to so much of the complaint as alleges that the Commission has violated and has unlawfully modified its Confidentiality Rules governing the LB Program,[8] and has misrepresented its legal authority to limit disclosure of information obtained from plaintiff corporations.

In substance, the sought-for relief would:

(1) enjoin the Commission and all its employees from disclosing to any person not expressly authorized to have access thereto under the Commission's Confidentiality Rules any information received from the companies in connection with the LB Program, and from publishing any such information in any manner or form;

(2) direct the Commission to notify all companies required to file reports that, notwithstanding the Commission's representation that access to all information submitted by the companies in connection with the LB Program could and would be limited to certain specified Commission employees, the Commission may lack the authority to prevent the public disclosure of, and so limit access to, all such information, by virtue of the Freedom of Information Act[9] and other provisions of law;

(3) enjoin the Commission from serving a notice of default[10] upon any company prior to ten days after this court's

---

1. 39 Fed.Reg. 30377 (Aug. 22, 1974).

2. 15 U.S.C. § 41 et seq.

3. 44 U.S.C. § 3501 et seq.

4. 5 U.S.C. § 551 et seq.

5. 18 U.S.C. § 1905.

6. 31 U.S.C. § 18b.

7. 13 U.S.C. § 9.

8. Rules and Procedures for the Use of Confidential Individual Company Data Collected under the FTC's Line of Business Program.

9. 5 U.S.C. § 552.

10. 15 U.S.C. § 50.

determination as to whether this action may be maintained as a class action; and

(4) authorize the deposit with the Clerk of this Court of LB Forms by companies which elect to file them, subject to disclosure only upon order of this court.

■ The broad sweep of the proposed relief upon its face is such that it would, pending a trial, effectively halt the LB Program in its tracks. The plaintiffs, under the frequently enunciated rule in this circuit, have the burden of clearly demonstrating either (1) probable success on the merits *and* the possibility of irreparable damages, or (2) the existence of serious questions going to the merits *and* the tipping of the balance of hardship sharply in their favor.[11] We therefore turn to the essential facts to decide if plaintiffs have made a sufficient case for such drastic relief.

The LB Program had its genesis in the Commission's view that the data sought from the companies was required in order to carry out two distinct aspects of its statutory responsibility: first, its duty to investigate the extent of competition in the United States economy in general and in specific industries, and to report its findings to the Congress and the public; second, its responsibility to develop rational policy planning procedures for the enforcement of the antitrust laws. In addition, the Commission considered that the data was needed to encourage favorable decisions by potential investors in particular industries. Accordingly, the Commission, pursuant to 44 U.S.C., section 3512, submitted its proposed LB Form to the Comptroller General for his approval, which was granted on May 13, 1974.[12]

The Comptroller General found that the information sought in the Commission's LB Form was not presently available from another source within the federal government.

Thereafter, on August 2, 1974, the Commission passed a "Resolution Requiring Annual Line of Business Reports from Corporations," in which it resolved to proceed to collect the information called for in the LB Form. The resolution further provided that the data submitted by an individual company would be afforded confidential status in accordance with rules which were incorporated by reference in the resolution. In pertinent part these Confidentiality Rules provide:

"The names of companies, financial data and all other information which are obtained from respondent companies in connection with the Federal Trade Commission's Line of Business Reporting Program are confidential, and persons authorized to have access to this information may not release, discuss or in any way provide access to such information to anyone not authorized to have access. Further, all such Line of Business data are considered to be exempt from the disclosure provisions of the Freedom of Information Act."

On or about August 19, 1974, the Commission served its Order on 345 companies, comprising the purported class in this case, directing them to file completed LB Forms within 150 days. The following day, on August 20, 1974, eight of the named plaintiffs herein[13] filed with the Commission a joint motion to quash the Order to file the LB Forms and for ancillary relief.[14] The movants advanced, among other contentions, (1)

---

11. Columbia Pictures Indus., Inc. v. American Broadcasting Cos., 501 F.2d 894 (2d Cir. 1974) ; American Brands, Inc. v. Playgirl, Inc., 498 F.2d 947, 949 (2d Cir. 1974) ; Sonesta Int'l Hotels Corp. v. Wellington Associates, 483 F.2d 247, 250 (2d Cir. 1973) ; Pride v. Community School Bd., 482 F.2d 257, 264 (2d Cir. 1973).

12. Approval was granted subject to conditions not relevant to this motion.

13. Aluminum Company of America, E. I. DuPont de Nemours and Company, General Electric Company, General Motors Corporation, B. F. Goodrich Company, International Paper Company, Owens-Illinois, Inc., and Union Carbide Corporation.

14. The motion was filed pursuant to § 2.-12(b) of the Commission's Procedures and Rules of Practice, 16 C.F.R. § 2.12(b).

that the order was in excess of the Commission's authority and in violation of the movants' constitutional rights in that it was excessively burdensome, broad, vague, arbitrary and capricious, and (2) that the order was unlawful because it failed to provide adequate protection against disclosure of confidential data to be filed by individual reporting companies, and because aggregate LB data to be published by the Commission could be broken down to disclose the confidential financial data of individual reporting companies. Simultaneously the movants themselves publicized their motions, and their counsel consented to the release by the Commission of copies of their motion papers. Thereafter, other companies filed motions to quash, based on substantially the same grounds advanced by the initial eight movants. In all, approximately 226 of the 345 companies required to file LB reports made such motions.

On September 24, 1974, the Commission denied the various motions to quash. The denial, however, was without prejudice to a renewal of the motions limited solely to the issues of undue burden and lack of confidentiality. As to the issue of lack of confidentiality the Commission stated it would only consider claims relating to the possible discovery of confidential corporate information through techniques of disaggregating individual firm data from the aggregate multi-firm data to be published under the LB Program, and further required the companies to particularize the techniques relied upon in support thereof. As to the issue of undue burden, the Commission limited this issue to the cost of compliance with the Order and required those asserting such claims to give specific information in support thereof.

On October 4, 1974, a joint renewed motion to quash was filed by the twelve named plaintiffs herein—the eight original movants and four other companies.[15]

The briefs in support of the joint renewed motion specifically authorized the Commission "to release the present motion and the names of the moving parties to the public." Thereafter 111 other companies filed renewed motions to quash.

On October 30th the attorneys representing the twelve plaintiffs herein submitted to the Commission the opinion of an expert, whose opinion in turn was supported by another expert, that disaggregation of the information contained in the aggregate reports was feasible. The Commission was expressly authorized by the movants to release both experts' opinions to the public. Also submitted on October 30, on the issue of undue burden, were letters from each of the joint movants (plaintiffs herein) except one, B. F. Goodrich Co. Simultaneously the attorneys requested of the Commission that "[b]ecause confidential information is contained in some of these letters, and to preserve the rights of the Moving Parties with respect to confidentiality, . . . these letters be afforded confidential treatment pursuant to all applicable Commission rules." However, one of these companies, General Electric, expressly stated it had no objection to the publication of the material contained in its letter.

In addition to the eleven plaintiffs, thirty-nine other companies submitted information in support of their claims of lack of confidentiality or undue burden. Thus, out of 226 companies who originally moved to quash, after the denial thereof, 123 renewed such motions, and of that number only fifty submitted information purporting to support the claims of confidentiality or undue burden.

While the Commission had under consideration the renewed motions to quash, by letter dated November 27, 1974, it advised the attorneys representing the 123 companies that had filed renewed motions that a request had been received

---

15. The Coca-Cola Company, Kraftco Corporation, Armco Steel Corporation, and International Harvester Company.

from the Consumers Union under the Freedom of Information Act [16] to inspect and copy all motions to quash, including renewals thereof, as well as the identity of each movant. The Commission further advised the attorneys that its Confidentiality Rules did not apply to motions to quash or materials submitted in support of such motions, but only to information contained in the LB Forms, none of which had yet been filed; accordingly, that it had granted the Consumers Union's request as to the initial motions to quash, as none of the motions contained any information exempt from the provisions of the Freedom of Information Act. Parenthetically it should be noted that those motions contain no information other than general arguments in support of the attack upon the validity of the Order directed to the companies to file LB Forms; they contained no information about any particular company.

With respect to the Consumers Union's request for copies of all renewed motions to quash and materials in support thereof, the Commission advised that it had deferred final determination in order to consider whether any of the commercial or financial information contained therein was exempt from disclosure under Exemption 4 of the Freedom of Information Act.[17] The Commission further requested that it be advised of any information or material contained in the documents filed which was not public and which, if disclosed, was likely to cause harm to the competitive position of the company. The company was required to support such a claim by an affidavit specifying which portions of the document contained alleged confidential information and a written justification of any contention that disclosure was likely to cause substantial harm to its competitive position. The information was to be submitted within fifteen days, and if no response was received, all materials in connection with the renewed motions to quash would be immediately released to the Consumers Union. The Commission promised to give ten days' notice of any determination to release information submitted by any company advancing a proper and timely claim of confidentiality. The Commission is yet to rule upon the requests of individual companies that material be granted confidential status. It has agreed to withhold decision pending a determination by this court of the instant application.

At the time of the commencement of this suit, the Commission had not ruled on the renewed motions to quash; accordingly, one of its contentions in opposition to this motion for preliminary injunctive relief was that administrative procedures had not been exhausted. However, on the very day of the argument the Commission denied the renewed motions to quash, but did not inform the court and the parties until the following day.[18] As to the issue of undue burden, the Commission found that no company had demonstrated that the cost of complying with the LB Form is unduly burdensome. As to the issue of confidentiality, it found that while many of the companies made general arguments as to the techniques that might be employed to disaggregate material, none went into sufficient detail to prove that disaggregation is possible. It took note of the experts' opinion offered by the companies, but deemed disaggregation in the circumstances "highly improbable." In any event, the Commission specifically noted its purpose to adhere to its Confidentiality Rules with respect to the LB Forms and not to publish aggregate information in such a way that it would disclose information about private companies.

Of the 345 companies originally served with the Order, only 164 were required to file their LB Forms on or about January 15, 1975. Of these 164,

16.  5 U.S.C. § 552.

17.  5 U.S.C. § 552(b)(4).

18.  It appears that the Commission lawyers who were present at the argument of the motion were unaware of the Commission ruling.

123 had filed LB Forms with the Commission as of January 28, 1975.[19] The Commission granted extensions to February 15, 1975 to 147 companies, including the plaintiffs herein.[20]

Against this background the court turns to the relief requested by the plaintiffs. With respect to the first request—that the Commission be preliminarily enjoined from disclosing any information received from the companies in connection with the LB Program—the court considers only the potential disclosure of information contained in the ten letters in support of the renewed motion submitted by the named plaintiffs other than B. F. Goodrich, which did not submit a letter, and General Electric, which consented to the release of its letter. As to the General Electric letter and the names of the parties who made motions and publicized or consented to the publication of such motions, there is clearly no occasion for injunctive relief.

■ The plaintiffs urge that they are acting on behalf of all 345 companies that received the Order; they request that injunctive relief be extended to the thirty-nine other companies who filed material in support of the renewed motions, as well as to all other corporations to the extent that relief may be available, such as restraining the Commission from publishing their names or disclosing information contained in LB Forms. The plaintiffs, together with the remaining 333 corporations that the Commission requested to file reports are the giant manufacturing corporations of the nation. Each is possessed of substantial financial resources; each has at its command capable legal representation; each is sensitive to and fully aware of the nature of the information submitted or yet to be submitted to the Commission; each is fully aware of the claims asserted by these plaintiffs that the Commission exceeded its authority and violated both contractual and statutory provisions. Yet as of the date of argument on this motion, none of the corporations other than the named plaintiffs had filed suit against the Commission or sought to intervene in this action. While the matter was sub judice, only a handful of these other corporations have taken such action.[21] Indeed, as noted, 123 companies have already filed LB Forms. Moreover, there is no indication that any of the thirty-nine corporations other than the named plaintiffs object to disclosure of material submitted in support of the renewed motions. It may well be that, like General Electric, they do not regard disclosure as contrary to their interest. Under the circumstances, consideration of the first branch of the instant motion will be confined to the ten named plaintiffs that submitted information in support of the renewed motions to quash without consenting to its release.[22]

Plaintiffs emphasize that the relief they seek on this motion is restricted. It is limited to their claim that disclosure of the material submitted in support of the renewed motions to quash would violate the Commission's Confidentiality Rules. Plaintiffs' purpose in so confining the issue is evident from their acknowledgment that notwithstanding the Rules, disclosure may be mandated under the Freedom of Information Act [23]—in short, that the Commission's rules may contravene the statute—a point emphasized by their re-

19. Of the 123 LB Forms that had been filed as of January 28, 18 are considered by the Commission to have been filed under protest.

20. The Commission staff has apparently granted extensions to 34 additional companies.

21. 23 companies have joined in motions to intervene in this action. 2 other companies have filed with this court a complaint adopting by reference the allegations made in the complaint in this case. 7 companies have brought a similar action in the District Court in Delaware.

22. Since none of the named plaintiffs have filed LB Forms, there is no need to consider the potential release of these Forms or of aggregate LB data, which plaintiffs claim can be disaggregated to reveal individual company LB data.

23. 5 U.S.C. § 522.

quest as part of the relief sought on this motion that the Commission notify each of the 345 companies that the Commission "may lack legal authority to limit" under its Confidentiality Rules access to the information submitted under the LB Program. Thus, by design, there is not now before the court the issue of whether or not the material is subject to mandatory disclosure under the Freedom of Information Act.

■ The plaintiffs contend that the Commission's decision to examine the material to determine whether any part is confidential is inconsistent with its stated position, as set forth in its Confidentiality Rules, that all information submitted in connection with the LB Program is confidential, and that this alteration in the Commission's policy squarely presents to this court the question whether the Commission may. violate its own rules or modify them after companies have acted in reliance upon them. The court does not agree that this is the focal point for decision. Whether or not the Commission has altered its policy, by making its Confidentiality Rules applicable only to information contained in or of the type that would be contained in the LB Forms, as distinguished from information submitted in connection with motions attacking the Commission's Order, is not dispositive of this motion for preliminary injunctive relief.

■ The essential question at this juncture of the litigation is whether the plaintiffs have made out a sufficient case to warrant this court's invoking its equitable powers on their behalf. This they have failed to do. The Commission, through its attorneys appearing for it on this motion, has represented that it will give all affected companies, including plaintiffs, ten days' notice of any determination to release information submitted in support of the renewed mo-

tions to quash.[24] While the named plaintiffs have submitted in camera to this court copies of the material, disclosure of which they contend would be detrimental to their interest, it does not appear from the face of such material in what respect publication would be harmful to them. True, general statements are made to this effect, but there is no factual support therefor. And, as already noted, one plaintiff expressly consented to disclosure. Under these circumstances, the plaintiffs have not satisfied either branch of the oft-stated standard for the issuance of a preliminary injunction;[25] they have not demonstrated either the possibility of irreparable injury or the tipping of the balance of hardship sharply in their favor. In short, plaintiffs will suffer no injury by awaiting notice of the Commission's determination. If the Commission decides against the release of the information, obviously there will be no basis for the relief requested; if the Commission decides to release the information, plaintiffs will have ten days in which to apply for injunctive relief upon a factual showing, here lacking, that equity requires it be granted. Accordingly, plaintiffs' motion for a preliminary injunction to enjoin the Commission from disclosing information received in connection with the LB Program is denied.

■ Plaintiffs' second request for relief is that the Commission be directed to give notice to all the members of the purported class that by virtue of the Freedom of Information Act the Commission may lack the authority to prevent the public disclosure of all information submitted in connection with the LB Program. The purpose of such an order, in the plaintiffs' view, would be to minimize the possibility that companies will file LB Forms or other material in reliance upon the Commission's assurance that such material is confiden-

24. Thus there is no longer any question whether the Commission's promise to give ten days' notice extends to those companies, including all named plaintiffs except Kraftco Corp., which failed to follow the required procedures in filing responses to the November 27 letter.

25. Note 11 *supra* and accompanying text.

tial and considered exempt from the disclosure provisions of the Freedom of Information Act, which assurance plaintiffs contend exceeded the Commission's authority. Clearly the named plaintiffs, which have raised this issue of the Commission's authority to protect the material submitted, are in no need of notice that such a question exists. This second request for relief is assertedly made for the benefit of the other members of the purported class, and it is denied for the same reason that the court confined consideration of the first branch of the motion to the named plaintiffs. The other corporations no doubt have access to thorough legal advice and have been sensitive to the issues posed in this action. They do not require the advice or guidance of plaintiffs, with which some are in competition; each has the capacity and resources to fend for itself.

■ Both the plaintiffs and the Commission agree that a company need not file an LB Form if it is judicially contesting the lawfulness of the LB Program. Plaintiffs make their third request, for an order enjoining the Commission from serving default notices pending determination of the class action issue, in order to remove the need for all the members of the purported class to file lawsuits to protect themselves. The plaintiffs' expressed concern is to avoid a multiplicity of lawsuits and promote efficient judicial administration. The court is unpersuaded that efficient judicial administration requires any such order. Any problems that may arise by reason of multidistrict litigation can readily be resolved pursuant to the terms of section 1407 of Title 28 or other applicable statutory provisions.

Even if the court were moved by the desire to avoid additional complaints by the other members of the purported class, there would be no need to enjoin the issuance of default notices. Under section 10 of the Federal Trade Commission Act,[26] daily fines for failure to file reports such as the LB Form do not begin to accrue until 30 days after a default notice is issued. Default notices by themselves carry no adverse consequences, and there is therefore no need to enjoin their issuance. If any company receives a default notice, it will have ample time to seek the court's protection before suffering any injury.[27] It should also be noted that the Commission may decide to enforce its Order without resort to default notices and the threat of consequent fines. Under section 9 of the Federal Trade Commission Act,[28] the Commission can bring suit for a mandatory injunction to enforce its Order without issuing a default notice. Upon argument of this motion, plaintiffs' counsel conceded that in such an action plaintiffs could advance as defenses thereto all claims asserted in this action.

■ Finally, the plaintiffs request that the Clerk of the Court be authorized to receive LB Forms from those companies that elect to prepare them for the purpose of facilitating an assessment of the reliability and meaningfulness of the data to be collected.. This is not a function of the Clerk's office, or one delegated to it by Congress. Moreover, there is no reason to burden the Clerk of the Court in the manner suggested; to the extent that plaintiffs believe that any data is necessary to demonstrate the strength of their claims in this lawsuit, such data may be submitted at the appropriate time in camera under adequate provisions, as was done in the instance of eleven plaintiffs herein.

For the above reasons, plaintiffs' motion for preliminary injunctive relief is denied.

---

**26.** 15 U.S.C. § 50.

**27.** *See* St. Regis Paper Co. v. United States, 368 U.S. 208, 225–227, 82 S.Ct. 289, 7 L.Ed. 2d 240 (1961); United States v. Morton Salt Co., 338 U.S. 632, 654, 70 S.Ct. 357, 94 L.Ed. 401 (1950); FTC v. Claire Furnace Co., 274 U.S. 160, 174, 47 S.Ct. 553, 71 L. Ed. 978 (1927); Genuine Parts Co. v. FTC, 445 F.2d 1382, 1391–1395 (5th Cir. 1971).

**28.** 15 U.S.C. § 49.