**GENERAL ELECTRIC COMPANY, Plaintiff,**

v.

**FEDERAL TRADE COMMISSION et al., Defendants.**

**INGERSOLL-RAND COMPANY, Plaintiff,**

v.

**FEDERAL TRADE COMMISSION et al., Defendants.**

Nos. 75-CV-562, 75-CV-566.

United States District Court, N. D. New York.

March 23, 1976.

Weil, Gotshal & Manges, New York City, for plaintiff, General Elec. Co.; Mark A. Jacoby, Roland C. Radice, Schenectady, N. Y., of counsel.

DiFabio & Couch, P. C., Albany, N. Y., for plaintiff, Ingersoll-Rand Co.; Martin J. Neville, Joseph W. Burns, Burns, Van Kirk, Greene & Kafer, New York City, of counsel.

Robert J. Lewis, Gen. Counsel, Gerald P. Norton, Deputy Gen. Counsel, Gerald Harwood, Asst. Gen. Counsel, Washington, D. C., for defendant, F. T. C. and Commissioners; Warren S. Grimes, Edward Eitches, Washington, D. C., of counsel.

James M. Sullivan, Jr., U. S. Atty., N. D. N. Y., Syracuse, N. Y., for defendant, Elmer B. Staats, Comptroller Gen.; Richard K. Hughes, Asst. U. S. Atty., Albany, N. Y., of counsel.

## MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, Chief Judge.

This litigation involves seriously contested issues of jurisdiction, venue and administrative law. The importance of their resolution is evident not only from the vigorous and voluminous submissions of the parties, but also from the point of view of closely related actions in two other federal district courts, as well as the proceeding brought by the defendant Federal Trade Commission (hereinafter "FTC") pursuant to Section 9 of the Federal Trade Commission Act, 15 U.S.C. §§ 41 *et seq.* in the District of Columbia. (hereinafter "enforcement proceeding"). *See Emerson Electric Co. v. F.T.C.,* Civ. No. 75–1173 (E.D.Mo., filed December 29, 1975); *Westinghouse Electric Corp. v. F.T.C.,* No. C–1–75–418 (S.D.Ohio, filed November 18, 1975); and *F.T.C. v. Emerson Electric Co., et al.,* Misc. No. 76–0002 (D.D.C., filed January 6, 1976).

The common and central issue in this litigation and in those previously mentioned is the legality of a proposal by the FTC to gather information about the manufacturing and sale of large electrical equipment which is produced by these electrical manufacturing companies. The study, which consists of data gathering, involves the distribution of a form composed of detailed questions and is called the "Economic Report on the Electrical Equipment Manufacturing Industry"; it is known as the Form "EEM". The articulated purpose of the FTC for gathering this data is to obtain information about certain equipment lines manufactured by plaintiffs and other electrical manufacturing companies and to use this information to empirically test the effectiveness of so-called "conduct remedies", e. g., fines, imprisonment, injunctions and treble damages, on the behavior of companies before and after certain anti-trust actions conducted in the 1960's against some of the large electrical equipment manufacturers.

The idea of the EEM questionnaire began on July 24, 1973 with the drafting of a "pretest" Form EEM. This was to be used to test the general feasibility and practicality of the EEM concept. However, it is the final draft of EEM which is at issue and being challenged in this action. See Exhibit N₂.

The submissions in this action have been voluminous and many of the same documents have been presented by the various parties to this action. Therefore, the exhibits submitted under the affidavit of Norman F. Heyl, Regulatory Reports Review Officer in the United States General Accounting Office, will be used as they are denominated therein to avoid confusion. This presentation of documents is complete and well organized for reference. Documents submitted by other parties and referred to herein will be so designated.

On June 27, 1975, the FTC pursuant to its procedures [see 16 C.F.R. § 2.12] approved and adopted this final Form EEM and ordered approximately forty-four major electric manufacturers to complete it; this order included the plaintiffs herein, the General Electric Company and the Ingersoll-Rand Company (hereinafter "GE" and "I–R" respectively). It is important to note that the pretest version of Form EEM was submitted to six manufacturers concerning its feasibility. However, after the motion was filed by GE with the FTC to quash that order for use of the form, the proposal to use pretest Form EEM was discontinued.

The final Form EEM, in issue here, was submitted on October 17, 1974, to the Government Accounting Office (GAO) pursuant to the Federal Reports Act, 44 U.S.C. §§ 3501–3512 (Supp. IV) for the mandated approval by the Comptroller General. The Comptroller General must determine, under § 3512, whether any governmental agency form (1) avoids duplication of effort in gathering information which might be already possessed by other independent regulatory agencies and (2) minimizes the compliance burden on business enterprises and other persons. Such screening, of course, designed for these worthy purposes, is an important legislative provision. See 44 U.S.C. § 3512(b)(1) and (2). Significantly, this review by the Comptroller General is not the ultimate determinant of forms used by the agency because:

> the independent regulatory agency shall make the final determination as to the necessity of the information in carrying out its statutory responsibilities and whether to collect such information.

44 U.S.C. § 3512(d). Although this review by the Comptroller General must be normally completed within forty-five days, extensions were agreed to by the GAO and the FTC concerning Form EEM. See Exhibit D. The decision by the Comptroller General is one committed to his discretion as the statute characterizes his response to the agency as "advice."

Certain changes were made in Form EEM pursuant to suggestions by the

GAO and certain electrical companies, including GE. Form EEM was then advised to be in compliance with the Federal Reports Act by letter from the GAO dated May 23, 1975, with the suggestion made therein that the FTC and the companies subject to complying with Form EEM meet to discuss and resolve some of the problems in providing data which, in some instances, would be up to twenty years old. *See* Exhibit M. Although some meetings were held, no mutual resolutions were forthcoming.

The plaintiffs herein were served with an order to comply with Form EEM in approximately June and July of 1975. The completed EEM was supposed to be filed with the FTC in or around September 1975. Both plaintiffs filed motions before the FTC to quash this order on July 18, 1975 on the grounds that Form EEM was burdensome, duplicative and violative of privileges of confidentiality; these motions were denied by the FTC on October 23, 1975.

The Form EEM was completed by twenty-seven companies and eleven companies were dropped because they did not manufacture equipment related to the survey. Four companies have not complied with the order, those being GE and I–R, plaintiffs herein, and the plaintiffs who have commenced the two other federal court actions mentioned previously. The statutory enforcement proceeding pursuant to Section 9 of the Federal Trade Commission Act was timely commenced against these four electrical companies by the FTC on January 6, 1976 in the District of Columbia. This was four days after the last deadline for submission of EEM by the Emerson Electric Co. on January 2, 1976. It is important to point out that although authority exists for the imposition of penalties against these companies that failed to file EEM within the allotted time, the FTC has not engaged the procedure to obtain such penalties, seeking instead to use the judicial review procedure of Section 9 of the Federal Trade Commission Act. *See also* Section 10, 15 U.S.C. § 50.

On November 20, 1975, GE commenced one of the instant actions in this District Court (75–CV–562) and on November 24, 1975, I–R commenced the other separate one (75–CV–566). Both these actions were commenced well before the final deadline for the filing of Form EEM by the Emerson Electric Co., one of the companies served with Form EEM, and thus before the FTC could reasonably have commenced an enforcement proceeding against all those companies who would not be in compliance. Both of the instant actions are largely identical and the plaintiffs have adopted a common strategy and indeed relied upon each others papers and other submissions and oral argument to a considerable degree. With the exception of a venue question effecting only I–R, discussed *infra,* this decision will not differentiate among the legal challenges made in the two actions.

The complaint is brought pursuant to numerous jurisdictional statutes. However, it is not the availability of jurisdiction which is at issue but rather whether jurisdiction should be exercised in these actions. Statutes relied upon as cited in the complaint and relevant to the decision here are: the Federal Trade Commission Act, 15 U.S.C. §§ 41 *et seq.,* the Federal Reports Act, 44 U.S.C. §§ 3501 *et seq.,* the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.,* the jurisdictional statutes alleged are: 28 U.S.C. §§ 1331, 1337, 1361, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. The substantive claims made are that: (1) the Form EEM is burdensome, vague and ambiguous in violation of the United States Constitution and statutes; (2) Form EEM was promulgated outside the authority of the FTC; (3) the Comptroller General and Government Accounting Office failed to carry out statutory duties in relation to Form EEM, especially pursuant to the Federal Reports Act; (4) the FTC failed to follow the proper rule making procedure mandated by the Administrative Procedure Act; (5) the Form EEM violated confidential privileges; and (6) Form EEM failed to comply with regulations promulgated under the Budget and

Accounting Procedure Act of 1950, 31 U.S.C. § 18b. The relief of declaratory judgment and a permanent injunction are sought essentially to void Form EEM and prohibit its use presently and in the future against the plaintiffs.

The motions presently before the Court are by the FTC and the Comptroller General to dismiss these actions without prejudice under the Federal Rules of Civil Procedure 12(b) for want of equity in this action and the existence of an adequate remedy at law elsewhere, namely, the enforcement proceeding in the United States District Court for the District of Columbia. Alternatively, defendants move to transfer these actions to the District of Columbia Court pursuant to 28 U.S.C. §§ 1404(a) and 1406(a) or to stay these actions pending the completion of the enforcement proceeding in the United States District Court for the District of Columbia. The Comptroller General has also moved for summary judgment pursuant to F.R.Civ.P. 56.

The plaintiffs have each filed motions for an injunction to prevent the FTC from pursuing the enforcement proceeding in the District of Columbia and also compelling the FTC to present the claims made in their enforcement proceeding in the instant action as compulsory counterclaims. *See* F.R.Civ.P. 13(a). However, by letter dated March 4, 1976, from counsel for GE, this Court was informed that no motion for a preliminary injunction would be filed in light of an assurance by the FTC that further action in the enforcement proceeding would be withheld for a period of three weeks. These motions were argued on March 1, 1976. Although no communication has been received on behalf of I–R in this regard, it is presumed that this delay period offered by the FTC would also obviate the need for such relief in I–R's action as well.

It is my judgment after review that has to be made hastily during a jury trial session, that the interests of justice will best be served by transferring the instant actions to the United States Dis-

trict Court for the District of Columbia where the enforcement proceeding has already been brought. The action commenced by GE is transferred pursuant to 28 U.S.C. § 1404(a); the I–R action is transferred pursuant to 28 U.S.C. § 1406(a) since, in my judgment, venue is improperly laid in this district.

■ Plaintiff, I–R argues that 28 U.S.C. § 1391(e)(4)—venue based on the residence of the plaintiff—can be any place where the company does business, because, pursuant to subsection (c), a corporate-defendant's residence is anywhere the corporation does business. I do not think that the definition of subsection (c) can be so easily transposed on subsection (e)(4) because their purposes and subjects are very different. Subsection (c) deals particularly and only with corporations as defendants while subsection (e)(4) refers generally to plaintiffs without any reference or allusion to corporate status. In any event, I–R is neither a corporate-defendant in the instant action, nor under any reasonable definition, does it reside in every district where it does business. Judge Friendly has clearly rejected the argument that gives a corporate-plaintiff greater venue options than a natural person:

> we find it exceedingly hard to believe Congress had any idea that by enacting § 1391(c) it was allowing a corporation which did business in a multitude of districts to sue in any of them irrespective of the residence of the defendant, although a natural person similarly doing business in a number of districts could sue only in the district of his residence or in that of the defendant. . . . we see no reason to suppose that Congress did not consider that the four venue choices afforded under § 1391(e) would suffice even though a plaintiff corporation remained a "resident" of only the chartering state.

*Manchester Modes, Inc. v. Schuman,* 426 F.2d 629, 632–633 (2d Cir. 1970). This holding is fortified by the subsequent opinion of the Court of Appeals, Second Circuit, in *Natural Resources De-*

*fense Coun. v. Tennessee Valley Authority,* 459 F.2d 255, 257 (2d Cir. 1972) which characterized such a broad interpretation of the scope of subsection (e) as advocated by I–R here as "a result apparently so eccentric, the court [below] fell into error by treating that section simply as a text to be parsed with such aid as the dictionary and grammar afford and without adequately considering the history of the statute and the evil it was designed to cure." *See also American Cyanamid Co. v. Hammond Lead Products, Inc.,* 495 F.2d 1183, 1184–85 (3rd Cir. 1974); *cf. Pure Oil Company v. Suarez,* 346 F.2d 890, 892 and 897 (5th Cir. 1965), aff'd, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966); *Time, Inc. v. Manning,* 366 F.2d 690, 696 n. 7 (5th Cir. 1966).

As previously mentioned, jurisdiction over the subject matter is not contested and would properly be exercised under certain circumstances in this Court in a preenforcement action for this "was the very purpose of the Declaratory Judgment Act . . . " *Abbott Laboratories v. Gardner,* 387 U.S. 136, 152, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681, 693 (1967). The real issue here is whether it is appropriate and sensible for this Court *to exercise* its jurisdiction in the context of the facts here and the situation of filings in several courts with similar issues. *See General Motors Corporation v. Volpe,* 457 F.2d 922, 923 (3rd Cir. 1972).

The recent decision of the Court of Appeals, Third Circuit, in *A. O. Smith v. Federal Trade Commission,* 530 F.2d 515, 44 U.S. Law Week 2402 (1976), is heavily relied upon by plaintiffs to support the exercise of jurisdiction by this Court. Realizing that the holding of the Third Circuit was principally in reversing the grant by the district court of a preliminary injunction issued against FTC action, it should not be thereby inferred that the mere retention of jurisdiction over that litigation has great precedential value in the instant action. This is particularly so in light of significant distinctions in the factual circumstances of both *A. O. Smith* and *Abbott*

*Laboratories* when compared with the case at bar in terms of satisfying the test for exercising jurisdiction in preenforcement actions. The Court of Appeals in *A. O. Smith* said that:

> it appears from the *Abbott Laboratories* trilogy that one seeking discretionary relief may not obtain pre-enforcement judicial review of agency action if there is no immediate threat of sanctions for noncompliance, or if the potential sanction is de minimis.
>
> 530 F.2d at 524.

It is my judgment that the action and order of the FTC issuing the Form EEM threatens neither plaintiff with immediate sanctions for noncompliance with Form EEM. As District Judge Weinfeld recently observed:

> Under section 10 of the Federal Trade Commission Act, daily fines for failure to file reports such as the LB Form do not begin to accrue until 30 days after a default notice is issued. Default notices by themselves carry no adverse consequences, and there is therefore no need to enjoin their issuance. If any company receives a default notice, it will have ample time to seek the court's protection before suffering any injury. It should also be noted that the Commission may decide to enforce its Order without resort to default notice and the threat of consequent fines.
>
> *Aluminum Co. of America v. F.T.C.,* 390 F.Supp. 301, 309 (S.D.N.Y.1975); *see also Genuine Parts Company v. F.T.C.,* 445 F.2d 1382, 1392 (5th Cir. 1971).

From the instant actions, it is apparent that the FTC has sought no civil penalties under Section 10 [15 U.S.C. § 50] by issuance of any default notice, but has itself only sought judicial review of the legality of the order by a section 9 [15 U.S.C. § 49] enforcement proceeding. It has, as previously mentioned, consented to withhold prosecution of the enforcement action in deference to the motions filed in the actions here and elsewhere. Thus, the dilemma in *A. O. Smith* and that which the United States Supreme

Court sought to ameliorate in *Abbott Laboratories*—where a company is compelled to make a Hobson's choice before judicial review can be sought in either altering the conduct of its affairs to a significant degree pursuant to an agency order, or refusing to obey the order and thereby risking civil fines and penalties—is not present here. *See also United States v. Morton Salt Co.*, 338 U.S. 632, 654, 70 S.Ct. 357, 369, 94 L.Ed. 401, 416–417 (1950). Here, not only are no fines impending against plaintiffs but significantly judicial review is being sought by the agency itself. Additionally, the circumstances in both *Abbott Laboratories* and *A. O. Smith* each involved an agency order which necessitated permanent and serious changes in the conduct of the affairs of the companies subject to the order: in *Abbott Laboratories* it involved permanent changes in the labeling of drugs; and in *A. O. Smith* an order which would require an *annual* accounting report.

The case at bar involves an order for only one compilation of data i. e., for answers to an extensive form questionnaire. In this sense it imposes no long term change in the conduct of plaintiffs such as a staff to generate an accounting report annually, or the mechanical and other changes associated with changing the labeling on products. Whether, as a single report, the EEM is burdensome in length or scope is not an important issue in determining whether there is impending injury sufficient to justify preenforcement by this Court. The issue is simply whether plaintiffs are forced to either take significant action or actually incur penalties by refusing to obey the order before a court of law is able to adjudicate legal challenges to the order. Plaintiffs here, in my judgment, are forced to take no action at this time with respect to the EEM, nor are they suffering any penalties for their present inaction on EEM. The obligation of EEM is finite; it would end, at least in this phase of the study, with the providing of the information, and this imposes no permanent changes on the corporate behavior or in the business operations of the plaintiffs. *Compare, St. Regis Paper Co. v. United States*, 368 U.S. 208, 225–226, 82 S.Ct. 289, 299–300, 7 L.Ed.2d 240, 252–253 (1961).

■ Of course, the most salient point is that judicial review is precisely what is being sought by the FTC's instant motions and hence it is conceivable that, under somewhat different circumstances, dismissal of the instant actions without prejudice would be the appropriate relief. However, other facets of this litigation make it more appropriate, to my mind, for transfer to the United States District Court for the District of Columbia where the enforcement proceeding has already commenced. The United States Supreme Court, in responding to a suggestion in *Abbott Laboratories* that the specter of multidistrict litigation would allow preenforcement litigation to paralyze agency action, proposed a solution short of locking the courthouse doors to such suits:

> The short answer to this contention is that the courts are well equipped to deal with such eventualities. The venue transfer provision, 28 U.S.C. § 1404(a), may be invoked by the Government to consolidate separate actions.

*Id.*, 387 U.S. at 154–155, 87 S.Ct. at 1519, 18 L.Ed.2d at 695.

The circumstances which the Supreme Court had in mind exists in the present actions, in my judgment. There are now pending four plenary actions in three different United States District Courts at this time as well as the statutory enforcement proceeding pending in the District of Columbia. All of these actions involve essentially the same issue, to wit, the legality of the Form EEM.

■ Federal courts have the power and, indeed, the responsibility to coordinate and switch cases on a national scale in the aid of the more efficient administration of justice. *Hall v. E. I. DuPont De Nemours & Co., Inc.*, 345 F.Supp. 353, 384–85 (E.D.N.Y.1972); *see Farbenfabriken Bayer, A.G. v. National Distill. & C. Corp.*, 324 F.Supp. 156, 158 (S.D.N.Y.

1971); *Securities and Exchange Commission v. First Nat. Finance Corp.*, 392 F.Supp. 239, 241 (N.D.Ill., E.D.1975); *Jacobs v. Tenney*, 316 F.Supp. 151 (D.Del. 1970). It is a tested and efficient policy that works well to put together in one District Court issues of similarity and thus reduce a proliferation of judicial decision making. A transfer will promote the speedy and efficient determination of the issues of this litigation as well as avoid inconsistent judgments and their repercussions if appeals are then taken. Such purposes are similar to those that underlie the statute allowing consolidation of multidistrict litigation. *See* 28 U.S.C. § 1407.

█ Furthermore, in light of the timely enforcement proceeding commenced by the FTC and their forbearance from seeking statutory penalties, it is my firm judgment, that preserving the integrity and efficiency of the judicial review procedure mandated by Congress in the Federal Trade Commission Act is of equal importance in supporting an order of transfer. *Federal Trade Commission v. Claire Furnace Company*, 274 U.S. 160, 173–74, 47 S.Ct. 553, 556, 71 L.Ed. 978, 981–982 (1927); *cf. Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Dunlop v. Bachowshi*, 421 U.S. 560, 566–68, 95 S.Ct. 1851, 1857–1858, 44 L.Ed.2d 377, 386–387 (1975). The Federal Trade Commission, or any regulatory agency for that matter, could not conduct its statutory responsibilities efficiently if it were forced to litigate its orders again and again throughout the nation by full plenary proceedings with numerous appeals to follow. Such circumstances are particularly inappropriate when the FTC itself has sought enforcement of its orders by the statutory section 9 enforcement action which has fewer procedural and pretrial tangles and which was specifically created by Congress for such purposes. *See Hannah v. Larche*, 363 U.S. 420, 446–448, 80 S.Ct. 1502, 1516–1518, 4 L.Ed.2d 1307, 1323–1325 (1960).

The plaintiffs argue that the enforcement proceeding pending in the District of Columbia is inadequate to protect their rights for three reasons: (1) it is not a full plenary proceeding with complete discovery and other pretrial procedures; (2) it does not involve the Comptroller General as a party defendant as the instant litigation does, hence the claims made against him will not be resolved; and (3) the District of Columbia is an inconvenient forum for the plaintiffs and their witnesses and records. In my judgment, rather than militating against transfer, these arguments at least in part support a decision to transfer.

The plaintiffs can hardly complain that the enforcement proceeding will give them a speedier determination than would be available here, unless it is understood that the plaintiffs are in no hurry to risk a decision which would compel compliance with Form EEM. If certain discovery procedures or other pretrial devices are necessary for a fair adjudication, plaintiffs may apply for consolidation of this action with the enforcement proceedings, or petition the court there for leave to have discovery of any relevant materials. Similarly, request could be made to join the Comptroller General as a party in the enforcement proceeding or he would become a party if consolidation were granted joining the instant actions with the enforcement proceeding. Under these circumstances, the plaintiffs' interest in litigating certain legal issues against the Comptroller General would be satisfied. In any event, it has been stated by a distinguished District Judge that the claims made by plaintiffs could be advanced as defenses in the enforcement action thereby assuring full adjudication of all related legal issues. *See Aluminum Co. of America v. F.T.C.*, supra, 390 F.Supp. at 309.

█ Finally, there is little persuasiveness to the claims that these companies, with substantial resources of personnel and money, would be unduly inconvenienced by traveling to Washington, D. C., to participate in the enforcement proceeding. *Cf. A. O. Smith v. F.T.C.*, *su-*

*pra.* In this regard it is interesting to note that I–R is a corporation based in the State of New Jersey and as such apparently finds no inconvenience in litigating their claims in this Northern District which is located in Albany, New York. In my judgment, Washington, D. C. presents no significantly greater inconvenience in these days of modern travel means for I–R than they sought to impose upon themselves in the instant action.

In conclusion, the pending enforcement proceeding having been promptly commenced by the Federal Trade Commission and the absence of either a pending accrual of statutory penalties or the compulsion of an order calling for significant changes in the manner in which a company conducts business, the exercise of jurisdiction on the merits is inappropriate in the instant actions. However, the multiplicity of actions in this and other district courts which all involve essentially similar claims would more properly be litigated in the enforcement proceeding now pending in the United States District Court in the District of Columbia. Such a transfer would promote proper judicial administration of the federal courts, preserve the integrity of the administrative and statutory review procedures mandated by Congress, and generally further the interests of justice.

As remarked by Mr. Justice Douglas, "Common sense often makes good law." *Peak v. United States,* 353 U.S. 43, 46, 77 S.Ct. 613, 615, 1 L.Ed.2d 631, 635 (1957). In my judgment, the common sense solution to the problems of the instant litigation and the other actions currently pending elsewhere is to place it in the District of Columbia where a more unified, orderly and expeditious judicial determination may be had and in the same process the integrity of the administrative process of the Federal Trade Commission may be preserved. There is thus little loss to the parties and a great deal to be gained by the judicial system by one adjudication on the legality of EEM.

The motions of defendants to transfer these actions to the United States District Court for the District of Columbia are granted pursuant to 28 U.S.C. § 1404(a) with respect to the GE action, 75–CV–562, and pursuant to 28 U.S.C. § 1406(a) with respect to the I–R action, 75–CV–566. In light of the transfer of these actions to the United States District Court for the District of Columbia, the motions of the plaintiffs for injunctions are hereby denied.

The alternate relief requested in the motions of defendants to transfer being hereby granted, their motions for dismissal of the instant actions without prejudice or staying the actions is hereby denied. However, this order of transfer of both actions is stayed until March 30, 1976, and then to expire, in order to allow plaintiffs sufficient time, if they be so advised, to file a notice of appeal and to apply to the Court of Appeals, Second Circuit, for further stay pursuant to the Federal Rules of Appellate Procedure 8(a).

It is so Ordered.